**Sergei KOVALEV, Appellant,**

v.

**Daniel SOWELL, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 11, 2003.

Filed Nov. 17, 2003.

Reargument Denied Jan. 22, 2004.

Sergei Kovalev, appellant, pro se.

Francis D. Mackin, Philadelphia, for appellee.

BEFORE: STEVENS, KLEIN, and GRACI, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, Sergei Kovalev ("Kovalev"), appeals *pro se* from an order entered in the Court of Common Pleas of Philadelphia County on February 28, 2003,[1] denying his motion to remove a compulsory nonsuit entered in favor of Appellee, Daniel Sowell ("Sowell"). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 Kovalev and Sowell were involved in an automobile accident in November, 2000, in Philadelphia. Kovalev, acting *pro se,* filed a negligence action against Sowell on October 22, 2001, seeking damages for "severe traumatic personal injuries to his spine in [the] form of multiple herniations of the vertebral disks, injury to his nerves and nervous system." Complaint, 10/22/01, at 2. Kovalev also sought compensation for loss of income and medical and legal expenses. Settlement negotiations proved unsuccessful and the parties proceeded to a jury trial on January 22, 2003.

---

1. The trial court's order was docketed on March 3, 2003, as reflected in the journal pages.

¶ 3 At trial, Kovalev, who was trained in Russia as a medical doctor, wished to offer expert medical testimony on his own behalf. After questioning Kovalev regarding his qualifications, the trial court refused to qualify him as a medical expert and disallowed his testimony in that capacity. Kovalev also intended to call his treating physician, Dr. Mark Allen, an orthopedic surgeon, as an expert medical witness. Dr. Allen failed to appear as scheduled and, when telephoned by the trial court, "informed the Court that he had to handle a number of emergencies at the hospital and could not say when, if ever, he would be available to testify." Supplemental Opinion, 4/14/03, at 1. Sowell promptly moved for a compulsory nonsuit, which the trial court granted.

¶ 4 Kovalev filed post-trial motions seeking removal of the nonsuit. The trial court denied the motion in an order dated February 28, 2003 and docketed on March 3, 2003. Kovalev, still proceeding *pro se*, now appeals from that decision.

¶ 5 Kovalev raises a number of issues on appeal. Three are pertinent to our disposition and may be summarized as follows:

1. Whether the trial court erred by disallowing Kovalev from offering expert medical testimony on his own behalf?

2. Whether the trial court erred by not continuing the trial after Kovalev's expert medical witness, Dr. Mark Allen, failed to appear?

3. Whether the trial court erred by entering a compulsory nonsuit in Sowell's favor and by denying Kovalev's post-trial motion to remove the nonsuit?

Brief for Appellant, at 3.[2]

## II. DISCUSSION

¶ 6 Although the primary issue in this appeal is the propriety of the compulsory nonsuit entered below, we must first examine two evidentiary issues that are inextricably linked to the trial court's decision and, therefore, to our analysis. The record indicates that Kovalev's evidence on the issue of proximate causation would have been limited to expert medical testimony from two sources: himself and Dr. Mark Allen. Thus, we must first determine whether the trial court erred by disallowing Kovalev from testifying on his own behalf as a medical expert. Then we must ascertain whether the trial court erred by not continuing the trial after Dr. Allen failed to appear.

¶ 7 "Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court." *West Philadelphia Therapy*

2. Kovalev also raises the following issues: (1) Whether the trial court erred by disallowing the testimony of an accountant regarding Kovalev's potential earnings losses; (2) Whether the trial court erred by limiting Kovalev's testimony regarding his own past and future loss of income; (3) Whether the trial court erred by precluding Kovalev from offering evidence of Sowell's prior motor vehicle accidents; (4) Whether the trial court erred by precluding evidence related to Sowell's automobile insurance coverage; (5) Whether the trial court exhibited prejudice toward Kovalev by advising him to accept Sowell's settlement offer and warning Kovalev that his case could be dismissed; (6) Whether the trial court erred by limiting opening statements to ten minutes; and (7) Whether the trial court erred by allowing each party three peremptory challenges during jury selection? Brief for Appellant, at 3. As discussed more fully in text, Kovalev was unable to offer any evidence on the issue of proximate causation. As a result, we find that the trial court properly granted Sowell's motion for a compulsory nonsuit and committed no error in subsequently refusing to remove the nonsuit. The aforementioned issues are rendered moot by our disposition.

*Center v. Erie Ins. Group,* 751 A.2d 1166, 1167 (Pa.Super.2000) (citation omitted).

It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. *Rauch v. Mike–Mayer,* 783 A.2d 815 (Pa.Super.2001). When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Miller v. Brass Rail Tavern,* 541 Pa. 474, 664 A.2d 525 (1995).

*George v. Ellis,* 820 A.2d 815, 817 (Pa.Super.2003).

The determination of whether a witness is a qualified expert involves two inquiries:

When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is 'so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.' ... If the subject is of this sort, the next question the court should ask is whether the witness has 'sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'

*McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 533 A.2d 436, 440 (1987), *appeal denied,* 520 Pa. 589, 551 A.2d 215 (1988), *and by Petition of Merck, Sharp & Dohme,* 520 Pa. 589, 551 A.2d 216 (1988) (quoting *Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408, 415 (1984)).

¶ 8 Instantly, we are concerned with the second prong of the analysis described in *McDaniel.* With respect thereto, the following discussion occurred after Sowell objected to Kovalev testifying on his own behalf as a medical expert:

THE COURT: What would be the basis for excluding him as an expert, other than the fact he may or may not have the credentials to do so?

MR. MAKIN [Sowell's attorney]: My basis is based on his training. His training and his practice in Russia, was in the military, a general practice, and he worked as a psychiatrist in a substance abuse facility, and we are talking about orthopedic problems here.

THE COURT: Were you trained as an orthopedic doctor?

MR. KOVALEV: I'm trained as a medical doctor.

THE COURT: Did you do a residency in orthopedics?

MR. KOVALEV: Not in orthopedics, no, but I know all medical conditions.

THE COURT: Did you do a residency in radiology?

MR. KOVALEV: Doctor Davidian [Sowell's expert] has no education at all about imaging, but he is trying to give his professional opinion on his videotape testimony. He is not practicing on spinal injuries. His resume shows he is hand and foot specialist.

THE COURT: Did you ever have a residency in orthopedics?

MR. KOVALEV: Not in orthopedics.

THE COURT: How about neurology?

MR. KOVALEV: Not in neurology. Expert witness, it is clear definition of expert witness——

THE COURT: What did you do your residency in?

MR. KOVALEV: Okay. It was—— I started in Russia and like I said number one, the program I finished kind of like covers everything. It's not like here, if somebody like internal medicine or family practice. It was extended education. And it was——

THE COURT: Where did you practice medicine?

MR. KOVALEV: I practiced in Russia. When I came here to United States, finally I passed the tests. I was trying to get into medical residency when accident happened, and I also spent one year as a physician in the Veterans Administration Hospital in Tampa, Florida.

THE COURT: What were you doing there? What was your job there?

MR. KOVALEV: Since I cannot prescribe medication, but I was doing exactly the same like—

THE COURT: Drug and alcohol counseling?

MR. KOVALEV: No, Veteran's Administration. Different rotation in different departments. Internal medicine, surgery, geriatrics, all of this stuff.

THE COURT: Your motion then is to preclude him from testifying as an expert and giving medical conclusions?

MR. MAKIN: Correct.

THE COURT: I'll sustain it. I'm going to grant your motion. I'm going to preclude you from testifying as an expert and giving medical conclusions to the jury about your injury or medical opinions.

N.T. 1/22/03, at 54–57.

¶ 9 The trial court's ruling was proper. As this Court has observed, "If ... the witness has neither experience nor education in the subject under investigation, he should be found not qualified." *Dambacher,* 485 A.2d at 418. The *Dambacher* court, in finding that an automobile mechanic was not qualified to testify as an expert on vehicle dynamics, made the following observations that are relevant to our inquiry:

> Other times it may appear that the scope of the witness's experience and education may embrace the subject in question in a general way, but the subject may be so specialized that even so, the witness will not be qualified to testify. Thus, every doctor has a general knowledge of the human body. But an ophthalmologist, for example, is not qualified to testify concerning the causes and treatment of heart disease.

*Id.* at 419 (collecting cases). *See also Dierolf v. Slade,* 399 Pa.Super. 9, 581 A.2d 649 (1990) (upholding trial court's refusal to qualify orthodontist as an expert witness on oral surgery); *McDaniel, supra* (physician specializing in anesthesiology not qualified to express opinion regarding (1) alleged misuse of antibiotic drug where physician had no clinical or research experience with the drug at issue, or (2) alleged inadequate supervision of hospital staff where physician's administrative experience focused on blood bank and not on supervision of attending physicians).

¶ 10 Clearly Kovalev had the benefit of medical training and, as evidenced by his *curriculum vitae,* experience in general internal medicine and the diagnosis and treatment of substance abuse problems. However, when questioned by the trial court, Kovalev admitted that he had no specialized skills, knowledge or experience in orthopedics, radiology, neurology, or any medical subspecialty that would have been pertinent to this case. At this point in the proceedings, it was incumbent upon Kovalev to further develop the record if he did in fact possess any specialized knowledge regarding the types of injuries he alleged.[3] Absent such evidence, we cannot

---

3. On this point we may distinguish the present case from two recent decisions of this Court: *B.K. v. Chambersburg Hospital & Michael Grossberg, M.D.,* 834 A.2d 1178 (Pa.Super.2003) and *George v. Ellis,* 820 A.2d 815 (Pa.Super.2003). In each of those cases, the trial court refused to qualify plaintiff's medical witness as an expert. We reversed the

say that Kovalev had a reasonable pretension to such specialized knowledge, or that his opinions or inferences would have probably aided the jury in its role as factfinder.[4] In light of the foregoing, and notwithstanding Pennsylvania's liberal standard for qualification of expert witnesses, we find no abuse of discretion by the trial court in sustaining Sowell's objection.

¶ 11 Kovalev next argues that the trial court erred by not continuing the trial after Kovalev's expert medical witness, Dr. Mark Allen, failed to appear. According to his statements to the trial court, Kovalev had arranged for Dr. Allen to testify at trial on January 23, 2003. N.T. 1/22/03, at 145. At the end of the proceedings on January 22, the following discussion occurred:

THE COURT: You'll continue with this tomorrow morning. What time will the doctor be here? The doctor will be here tomorrow morning?

MR. KOVALEV: Yes, tomorrow afternoon.

THE COURT: You will finish up this— is it a video?

MR. KOVALEV: No, live.

THE COURT: You will have him here?

MR. KOVALEV: He cannot leave patients, that is why he is coming like, I assume, we are talking about between 1:00 and 2:00.

THE COURT: No, I need him earlier. Have him here— tell him that we'll be ready for him in the morning. I guess once you are finished that we could have him here by 11 o'clock. All right. 11[ ] o'clock tomorrow.

MR. KOVALEV: I cannot force him.

THE COURT: He is subpoenaed, is he not?

[MR. KOVALEV]: *He has obligations to patients.*

THE COURT: Then videotape him tonight, sir. The court is ready for him tomorrow morning. I'm stretching it by saying 11 o'clock. I can't delay all day. Have him here. We'll see you tomorrow. Thank you.

MR. KOVALEV: I don't know. I just cannot bring him forcefully. He needs to see—

THE COURT: Call him and see if you can arrange for a videotape deposition tonight, so he can testify tomorrow morning.

*Id.* at 145–147.

¶ 12 The next morning, Kovalev informed the court that Dr. Allen was in surgery and would not be present at 11:00 a.m. N.T. 1/23/03, at 3. The court instructed Kovalev to contact Dr. Allen and

trial court's ruling in both cases. However, in both *B.K.* and *George,* the proffered witness had been questioned extensively at trial regarding his specific, relevant experience. In both cases, the witnesses had experience particularly related to the issues at trial and not merely generalized medical training as physicians. Armed with such evidence of record, the appellant in each case was able to argue successfully on appeal that the trial court abused its discretion in failing to adhere to Pennsylvania's liberal standard for qualification of experts. In the case at bar, Kovalev failed to offer any comparable evidence at the appropriate point in the proceedings.

4. Moreover, in preparing the expert report he submitted on his own behalf, Kovalev relied in part on the findings of his treating physician, Dr. Mark Allen, an orthopedic surgeon and Kovalev's other intended expert medical witness. At the point in the proceedings at issue here, the trial court anticipated that Dr. Allen would be testifying later in the trial. Thus, in all likelihood, any opinions Kovalev could have offered would have been cumulative of Dr. Allen's.

insist that he appear no later than 1:30 p.m. *Id.* at 4. When the afternoon session began Dr. Allen had still not arrived, prompting the following exchange:

THE COURT: All right, we'll go on the record. You had indicated to me, Mr. Kovalev that your doctor was in surgery and that you called and he was going to be here in fifteen or twenty minutes. He was on his way.

MR. KOVALEV: He told me he is finished and would be here in fifteen minutes. I called now. I don't know if he is still there.

THE COURT: We just spoke with him. He said that he doesn't know when he'll get here. There are a lot of emergencies going on at the hospital. He has to take care of that. He would like to be here, but he doesn't know when or if he will get here. We are going to continue then. I'm not going to postpone this for any reason. You could have videotaped him. He has not responded to the subpoena. I'm just not going to continue with this.

*Id.* at 41–42. At this point, the trial court granted Sowell's motion for a compulsory nonsuit and the case was dismissed. *Id.* at 44.

¶ 13 In his post-trial motion to remove the nonsuit, Kovalev argued that he properly served a subpoena on Dr. Allen in accordance with Pennsylvania Rule of Civil Procedure 234.2. Pursuant to Rule 234.2,

[a] copy of the subpoena may be served upon any person within the Commonwealth by an adult

(1) in the manner prescribed by Rule 402(a); [5]

(2) by any form of mail requiring a return receipt, postage prepaid, restricted delivery. Service is complete upon delivery of the mail to the person subpoenaed or any of the persons referred to in Rule 402(a)(2). The return receipt may be signed by the person subpoenaed or any of such persons; or

(3) by ordinary mail. The mail shall contain two copies of the Notice and Acknowledgment prescribed by Rule 234.9 and a self-addressed stamped envelope.

Pa.R.C.P. 234.2(b). Kovalev then argued that the trial court should have availed itself of the remedy provided for in Rule 234.5: "If a witness fails to comply with a subpoena, the court may issue a bench warrant and if the failure to comply is wilful may adjudge the witness to be in contempt." Pa.R.C.P. 234.5(a). Kovalev also argues that the trial court failed to adhere to Philadelphia County Civil Rule 216.1, which provides, in relevant part, as follows:

After a physician has been subpoenaed in accordance with the statute and the physician fails to appear, the Trial Judge

---

5. Pursuant to Rule 402, original process may be served
   (1) by handing a copy to the [recipient]; or
   (2) by handing a copy
      (i) at the residence of the [recipient] to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or
      (ii) at the residence of the [recipient] to the clerk or manager of the hotel, inn, apartment house, boarding house or

   other place of lodging at which he resides; or
      (iii) at any office or usual place of business of the [recipient] to his agent or to the person for the time being in charge thereof.

Pa.R.C.P. 402(a). In lieu of service under Rule 402(a), the recipient "or his authorized agent may accept service of original process by filing" an Acceptance of Service that substantially conforms with the form set forth in the rule. Pa.R.C.P. 402(b).

shall intervene upon application by counsel by calling and apprising the physician of the requirement to appear. If the physician refuses or fails to appear, a bench warrant shall issue and the Court shall grant a continuance of 24 hours, when required, for the attendance of the physician witness.

Pa. Phila. Co. Civ. R. 216.1(D). It is Kovalev's contention that the trial court was obligated under the local rule to issue a bench warrant for Dr. Allen and continue the trial for twenty-four hours.

¶ 14 The above assertions are premised upon Kovalev's claim that he served a subpoena upon Dr. Allen. As proof thereof, Kovalev has included a copy of the subpoena among the exhibits to his appellate brief. What Kovalev has failed to include, however, is the return of service required by Pennsylvania Rule of Civil Procedure 405:

(a) When service of original process has been made the sheriff or other person making service shall make a return of service forthwith....

(b) A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.

(c) Proof of service by mail under Rule 403 shall include a return receipt signed by the [recipient] [or proof that the recipient refused to accept service], ...

(d) A return of service by a person other than the sheriff shall be by affidavit....

(e) The return of service or of no service shall be filed with the prothonotary.

. . .

Pa.R.C.P. 405. There is simply no indication in the certified record or docket entries that the subpoena was properly served on Dr. Allen.[6] The trial court's authority to issue a bench warrant and continue the trial, whether derived from Rule 234.5 or local Rule 216.1, was not triggered unless and until proof of service of the subpoena was demonstrated. Kovalev failed to offer any proof in this regard and, accordingly, we must reject his claim.[7]

---

6. We note that there are two references to the subpoena in the trial transcript. At the end of the proceedings on January 22, the trial court asked Kovalev whether Dr. Allen was under subpoena. Kovalev was unresponsive and stated only that "he has obligations to patients." N.T. 1/22/03, at 146. The next day, while admonishing Kovalev for Dr. Allen's failure to appear, the trial court stated that "[h]e has not responded to the subpoena." N.T., 1/23/03, at 42. Neither of these offhand references are sufficient to prove, as a matter of law, that Dr. Allen had actually been served with a subpoena.

7. We note that the trial court took the extra step of telephoning Dr. Allen even though it was not obligated to do so. Dr. Allen "informed the Court that he had to handle a number of emergencies at the hospital and could not say when, if ever, he would be available to testify." Supplemental Opinion, 4/14/03, at 1. In light of Dr. Allen's rather dubious response, we agree with the trial court that it would have been unreasonable to continue the trial in the hopes that he would appear. Moreover, the trial court had advised Kovalev to videotape Dr. Allen's testimony, presumably because of the inherent scheduling difficulties that arise with physician witnesses. This is but one example of the trial court's willingness to advise a *pro se* plaintiff who was obviously unfamiliar with the complexities of trial administration and procedure. At this juncture we feel compelled to remind Kovalev that, as a *pro se* litigant, he " 'is not entitled to any particular advantage because [ ]he lacks legal training.' Further, 'any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.' " *Rich v. Acrivos,* 815 A.2d

¶ 15 Having found no error by the trial court in its handling of the aforementioned evidentiary issues, we may now review the court's refusal to remove the compulsory nonsuit.

An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. *Kuriger v. Cramer*, 345 Pa.Super. 595, 498 A.2d 1331 (1985). A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury. *Poleri v. Salkind*, 453 Pa.Super. 159, 683 A.2d 649 (1996). In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor. *American States Ins. Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 628 A.2d 880 (1993).

*Alfonsi v. Huntington Hospital, Inc.*, 798 A.2d 216, 218 (Pa.Super.2002) (en banc).

It goes without citation that as a part of a tort action the plaintiff must prove that the injury claimed to have been sustained and for which recovery is sought was caused by the tortious act or force of the tortfeasor. With regard to claims of physical injury or impairment, expert medical testimony is necessary to establish the causal nexus of the injury to the tortious conduct in those cases where the connection is not obvious. This is due to the complicated nature of the medical field which is beyond the knowledge of the average juror. *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892 (1974).

1106, 1108 (Pa.Super.2003) (citations omitted).

*Maliszewski v. Rendon*, 374 Pa.Super. 109, 542 A.2d 170, 172 (1988), *appeal denied*, 520 Pa. 617, 554 A.2d 510 (1989).

¶ 16 In this case, the injuries alleged by Kovalev involved trauma to his spine, vertebral disks and nervous system. By their nature, such internal injuries would not be readily observable by a jury. More importantly, the connection between Sowell's arguably tortious conduct and Kovalev's claimed injuries would have been far from obvious. This is clearly a case where expert medical testimony was necessary to establish the requisite causal nexus. Kovalev was certainly aware of the need for such testimony since he attempted to call his treating physician as an expert witness and insisted on offering his own medical opinion. That Kovalev was unsuccessful in presenting either source of evidence is, as discussed above, directly attributable to his unfamiliarity with the rules of evidence and civil procedure. The fact remains that Kovalev failed to offer a scintilla of evidence related to proximate causation. Even when we view the facts and all reasonable inferences arising therefrom in his favor, we must agree with the trial court's conclusion that Kovalev was unable to maintain his cause of action. The trial court properly entered a compulsory nonsuit in Sowell's favor and committed no error or abuse of discretion by subsequently refusing to remove it.

### III. CONCLUSION

¶ 17 In summary, we find that because Kovalev failed to offer any evidence that he possessed any specialized training in orthopedics, radiology or neurology, the trial court committed no abuse of discretion in refusing to qualify him as an expert medical witness in this case. Nor did the trial court abuse its discretion by taking no

action after Kovalev's expert witness, Dr. Mark Allen, failed to appear; there is no evidence of record that Dr. Allen was under subpoena. Kovalev failed to offer any evidence related to proximate causation and, as a result, could not establish the necessary elements to maintain his cause of action for negligence. The trial court properly entered a compulsory nonsuit on Sowell's motion and committed no error of law or abuse of discretion in subsequently refusing to remove the nonsuit. Based upon the foregoing, we affirm the order of the trial court denying Kovalev's post-trial motion.

¶ 18 Order affirmed.