J-S46032-18

2019 PA Super 110

BRYAN WRIGHT                                    :    IN THE SUPERIOR COURT OF
                                               :         PENNSYLVANIA
                      Appellant                :
                                               :
                                               :
                 v.                            :
                                               :
                                               :
RESIDENCE INN BY MARRIOTT, INC.    :    No. 3607 EDA 2017

Appeal from Judgment Entered October 23, 2017,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s): November Term, 2015 03381.

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                         **FILED APRIL 09, 2019**

Bryan Wright appeals from the judgment entered following a jury verdict in his favor in this slip-and-fall case. Although Wright succeeded in his claim, he requested a new trial on damages only based on the trial court's erroneous preclusion of testimony from Wright's sole medical expert. For the reasons that follow, we reverse the trial court's denial of a new trial.

Briefly, the relevant facts and procedural history are as follows. On January 5, 2014, Wright was staying at the Residence Inn by Marriott—Philadelphia Willow Grove, located in Horsham, Pennsylvania. That morning, as Wright walked outside on a paved pathway from one building to another at the hotel, Wright slipped on a four to six foot patch of ice and fell. As a result of the fall, Wright injured his left shoulder and bruised his hip and shoulder. He underwent treatment for his shoulder, including arthroscopic surgery. Trial Court Opinion, 4/17/18 at 1-2.

Wright filed suit against Marriott seeking damages for his injuries. A two day jury trial was held in August 2017. On the eve of trial, during jury selection, Marriott filed a motion *in limine* seeking to preclude the expert report and video testimony of Wright's sole medical expert, Paul Sedacca, M.D., along with five other motions *in limine*. Plaintiff intended to have Dr. Sedacca testify regarding the nature of Wright's injuries, the cause of his injuries, and his resulting treatment. The trial court granted Marriott's motion in part, but allowed limited testimony from Dr. Sedacca concerning Wright's medical bills. The next day, Wright asked the trial court to reconsider this issue, but the trial court again denied his request. Consequently, Wright could not present any testimony about Dr. Sedacca's qualifications, or the objective findings of Dr. Sedacca's physical examination of Wright. He also had no expert testimony regarding the nature of his injuries, the cause of those injuries, or the resulting treatment and prognosis.

After presentation of all of the evidence, the jury entered a verdict finding Marriott was negligent and Marriott's negligence was the sole cause of Wright's injuries. The jury awarded Wright $8,896.44 for his medical expenses and $55,000 for non-economic damages.

Dissatisfied with the amount, Wright filed post-trial motions arguing for a new trial. He claimed the trial court erred when it ruled that his only medical expert, Dr. Sedacca, was unqualified, because he was not an orthopedist, and prohibited him from testifying at trial. This further precluded Dr. Sedacca from introducing Wright's medical records at trial. Given the timing of

Marriott's motion, the eve of trial, Wright could not obtain another medical expert. Moreover, Marriott used the lack of medical testimony and medical records against Wright during its closing argument. Wright believed that these circumstances severely prejudiced him and warranted a new trial on damages. The trial court denied Wright's post-trial motions, and he timely appealed.[1]

> Wright raises the following issues for our review:
>
> Did the trial judge abuse her discretion by precluding the testimony of Paul J. Sedacca, M.D. when he was qualified to render opinions about plaintiff's shoulder injuries?
>
> Should Plaintiff be granted a new trial on damages when the trial judge's order precluding Plaintiff's only medical expert was prejudicial?

Appellant's Brief at 3.

Our standard of review regarding a trial court's ruling on a motion for new trial is as follows: "The Court will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law." *Reott v. Asia Trend*, 7 A.3d 830, 839 (Pa. Super 2010), *aff'd*, 55 A.3d 1088 (Pa. 2012). Specifically, "'[d]ecisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court' and '[w]e may reverse only if we find an abuse of discretion or error of law.'" *Hyrcza v. West Penn Allegheny Health Sys., Inc.*, 978 A.2d 961, 972 (Pa. Super. 2009) (*quoting* *Smith v. Paoli Memorial*

---

[1] Being well acquainted with the issues in this case, the trial court did not order a Pa. R.A.P. 1925(b) statement.

- 3 -

*Hosp.*, 885 A.2d 1012, 1016 (Pa. Super. 2005)), *appeal denied*, 987 A.2d 161 (Pa. 2009). "The trial court abuses its discretion when it misapplies the law or when a manifestly unreasonable, biased or prejudiced result is reached." *Girard Trust Bank v. Remick*, 258 A.2d 882 (Pa. Super. 1969). Additionally, "for such evidentiary ruling to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict." *Reott*, 7 A.3d at 839 (internal citations omitted). With this standard in mind, we address Wright's issues.

In his first issue, Wright contends that the trial court erred by refusing to qualify Dr. Sedacca as an expert. Wright maintains that Dr. Sedacca possessed the necessary qualifications and experience to offer his expert opinion about the nature of Wright's injuries, the cause of those injuries, Wright's treatment, and prognosis. Wright claims this ruling prejudices him. Consequently, he seeks a new trial, but only on the question of damages. **See** Wright's Brief at 15, 35.

Marriott strongly contests Dr. Sedacca's qualifications to testify. Also, it claims that Wright waived his issue regarding expert testimony because he failed to raise the issue of prejudice in his post-trial motion. Marriott's Brief at 19. Wright disagrees. He references several places in the record where he addressed how he was prejudiced. **See** Wright's Brief at 35.

Indisputably, "in order to preserve an issue for review, litigants must make timely and specific objections during trial *and* raise the issue in post-

trial motions." ***Allied Elec. Supply Co. v. Roberts***, 797 A.2d 362, 364 (Pa. Super. 2002), *appeal denied*, 808 A.2d 568 (Pa. 2002). The purpose of requiring that an issue be raised in post-trial motions is, in part, to give the trial court an opportunity to correct any errors after it has made its initial decision. ***See Benson v. Penn Central Transp. Co.***, 342 A.2d 393, 395 (Pa. 1975).

Our review of the record indicates that Wright objected to the preclusion of Dr. Sedacca's testimony at the time Marriott presented its motion *in limine.* Additionally, Wright asked for reconsideration of the matter the next day. Wright subsequently raised the issue in his post-trial motion.

However, Marriott contends that Wright must show that he was harmed by the trial court's ruling. Marriott thus argues that Wright needed to raise prejudice as a separate issue in his post-trial motion.

We find that Wright did raise the issue of prejudice in his post-trial motion. Wright specifically stated that "[d]uring oral argument on defendant's [m]otion *in limine* and the subsequent oral [m]otion for [r]econsideration, counsel for [Wright] informed the trial court that Paul J. Sedacca, M.D. was [Wright's] 'only medical expert witness' and that [Wright] *would be severely prejudiced* by the court's [p]reclusion [o]rder." Wright's Post-Trial Motion at 12. Wright argued in his post-trial motion that the ruling was particularly prejudicial given the lateness of Marriott's motion to preclude Dr. Sedacca's testimony. Wright could not obtain a substitute expert.

Wright further argued that he was prejudiced in his supplemental brief[2] in support of his motion for post-trial relief. He claimed he "suffered severe prejudice as a result of the trial [c]ourt's decision to preclude his only medical expert", Dr. Sedacca. Wright's Supplemental Brief at 21-23. The trial court's decision also affected Wright's ability to introduce his medical records at trial. Wright argued that this prejudiced him because Marriott used the lack of expert testimony and medical records against him during its closing argument, negatively affecting the jury's verdict.

Moreover, in deciding Wright's post-trial motions, we note that the trial court did not find waiver. Rather, the trial court dedicated two entire sections of its Pa.R.A.P. 1925(a) Opinion to address how its decision to preclude Dr. Sedacca's testimony did not prejudice Wright. **See** Trial Court Opinion, 4/17/18 at 5, 9. Thus, the record shows Wright raised the issue of prejudice in his post-trial motion. The trial court had the opportunity to reconsider the issue and correct any errors, satisfying the purpose of the rule regarding issue preservation. Thus, we conclude that Wright adequately preserved this issue for appeal. We now turn to the merits of Wright's first appellate issue— whether Dr. Sedacca was qualified to offer expert medical testimony in this case.

---

[2] Even though this brief is titled "supplemental", this is the only brief he submitted in support of his post-trial motion. Marriott's brief is likewise titled "supplemental".

Pennsylvania Rule of Evidence 702 provides that an expert may testify, "if scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert* by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." Pa.R.E. 702 (emphasis added).

The law regarding the qualification of an expert witness is well settled. In Pennsylvania, the standard for qualification of an expert witness is a liberal one. ***Miller v. Brass Rail Tavern***, 664 A.2d 525, 528 (Pa. 1995). The test to be applied when qualifying a witness "is whether the witness has *any* reasonable pretension to specialized knowledge on the subject under investigation." ***Id.*** (emphasis added). The witness need not possess "all of the knowledge in a given field" but must only "possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine in view of the expert's particular credentials." ***Id.***

Regarding medical experts, we have observed that "experts in one area of medicine may be found to be qualified to address other areas of specialization where the specialties overlap in practice, or where the specialist has had experience in a selected field of medicine." ***Chanthavong v. Tran***, 682 A.2d 334, 338 (Pa. Super. 1996). In ***Chanthavong*** , the plaintiff sought damages following a motor vehicle accident. The trial court precluded two of

the plaintiff's doctors from testifying at trial as expert witnesses, concluding that they were not qualified as such. One doctor was the plaintiff's family physician, a board-certified general practitioner, who was offered to testify regarding plaintiff's spinal injury and the necessary treatment. On appeal, we concluded that, because of the doctor's training and experience, "he had a reasonable pretension to specialized knowledge in the use of CAT scan reports to diagnose and treat patients. The combination of his training and experience with patients who have sustained personal injuries, qualified him to aid the jury in its deliberations." *Id.* at 339. In support of this proposition, we cited **Miller**, *supra*. Similarly, the plaintiff's second doctor was a board-certified radiologist with a subspecialty in neuroradiology, who also had teaching experience in this area. We concluded that he was qualified to offer an expert opinion regarding the pain associated with the herniated disc that the plaintiff had sustained. **Id**. As to both doctors, we held that the trial court should not have excused either of them merely because a more specialized doctor (i.e., an orthopedist or neurologist) would have been more qualified. **Id**.

However, we recognize that there are times when the subject matter is particularly specialized that a doctor from the field cannot offer opinions about a different field of practice. **See Dambacher by Dambacher v. Mallis**, 485

A.2d 408, 419 (Pa. Super. 1984), *appeal dismissed,* 500 A.2d 428 (1985).[3]
As we stated,

> the scope of [a] witness's education and experience may embrace the subject in question in a general way, but the subject may be so specialized that even so, the witness will not be qualified to testify. Thus, every doctor has a general knowledge of the human body. But an ophthalmologist, for example, is not qualified to testify concerning the causes and treatment of heart disease.

*Id.* at 419. Both Marriott and the trial court believed this case was so specialized that it warranted preclusion of Dr. Sedacca's testimony. We disagree.

Wright intended to offer Dr. Sedacca as a medical expert and disability evaluating physician. Dr. Sedacca was to offer his opinions about Wright's injuries, particularly to his shoulder, their relation to his fall, and his treatment, including the minor surgery on Wright's shoulder and his prognosis. In its motion *in limine*, Marriott argued that Dr. Sedacca did not qualify, because he lacked any experience, education, or training in the specific subject matter at issue – orthopedic surgery. Marriott stated, "[s]imply, an internist is not qualified to testify as an expert witness of

_____

[3] *Dambacher* is a products liability case involving several experts. There, we concluded that the proposed experts' general knowledge about tires did not qualify them to testify in that case where they had no education or experience on the specific subject at issue of mixing radial tires with non-radial tires. Although that case did not involve a medical expert, the Court, nonetheless, went on to cite many cases where doctors were not qualified to testify in certain circumstances, including cases from other jurisdictions. *Id.* at 420.

Additionally, we note that *Dambacher* was abrogated on other grounds by *Donoughe v. Lincoln Elec. Co.*, 936 A.2d 52 (Pa. Super. 2007).

orthopedics", relying on **Dambacher**. When ruling on the motion *in limine* and post-trial motions, the trial court agreed, citing **Wexler v. Hecht**, 847 A.2d 95, 99-100 (Pa. Super. 2004) *aff'd*, 928 A.2d 973 (Pa. 2007) (holding podiatrist not qualified to opine regarding *standard of care* for a malpractice case against an orthopedic surgeon). **Wexler** references **Damabacher** to support its conclusion.

Reliance on **Wexler** and **Dambacher** for the proposition that Dr. Sedacca was not qualified to testify in this case, because he had only general medical knowledge, is misplaced. Unlike **Wexler,** and many of the cases cited in **Dambacher**, this case is not a medical malpractice case. In medical malpractice cases, typically, our courts require a heightened standard for medical expert testimony on the standard of care for a specialized area of practice, if the defendant is a specialist.

On appeal, Marriott also relies on **Kovalev v. Sowell**, 839 A.2d 359 (Pa. Super. 2003). There, this Court affirmed a trial court's finding that Kovalev, who represented himself in his personal injury trial, was not qualified to testify as an expert witness about his own orthopedic injuries; Dr. Kovalev only had general unrelated medical experience in the military and as a psychiatrist in a substance abuse facility. **Kovalev**, 839 A.2d at 364. However, in reaching this conclusion, even though **Kovalev** involved a motor vehicle accident, the Court likewise relied on medical malpractice cases to support its conclusion. **Id.** at 363.

Because the test is whether a potential expert witness has *any* reasonable pretension, the heightened standard of admissibility applicable in medical malpractice cases does not apply in cases like this, where the proffered expert is a medical doctor who routinely treats patients with the type of injuries at issue. Moreover, **Kovalev** is distinguishable on its facts. Unlike Dr. Sedacca, Dr. Kovalev's training and experience were wholly unrelated to any medical subspecialty pertinent to his case. Dr. Kovalev was experienced in general internal medicine and the diagnosis and treatment of substance abuse problems. Dr. Kovalev was not even able to prescribe medication in the United States as he had not yet completed the requisite training to be able to practice in this country. He did not routinely treat accident victims with injuries like his own; Dr. Sedacca does. **See id.** at 363-64. We therefore conclude that the trial court misapplied the standard for qualifying an expert witness.

Applying the standard correctly, our review of Dr. Sedacca's qualifications shows, contrary to the trial court's conclusion, that Dr. Sedacca was qualified to testify in this case, as he possessed a reasonable pretension to specialized knowledge regarding the Wright's medical issues sufficient to assist the trier of fact. **See Miller**, 664 A.2d at 528; **Chanthavong**, 682 A.2d at 338-39.

At the time of trial, Dr. Sedacca was a licensed medical doctor in Pennsylvania, who had been practicing for over thirty-seven (37) years. Dr. Sedacca practiced in the area of internal medicine, which "encompasses all

aspects of medicine". As part of his internal medicine residency, Dr. Sedacca rotated through all of the different subspecialties and surgical subspecialties in medicine, where he was exposed to orthopedics and general surgery, including neurosurgery. The practice of internal medicine includes dealing with the musculoskeletal system and requires him to recognize potential surgical problems with his patients, so he can refer them to an appropriate subspecialist. Although he is not an orthopedic surgeon, Dr. Sedacca has dealt with patients in his practice who have orthopedic or shoulder-type injuries. He routinely refers patients for diagnostic tests, such as MRIs, and although he is not a radiologist, he and other internal medicine physicians customarily review and rely on the reports of those diagnostic tests to assist them in formulating their own opinions about a patient's diagnosis or conditions.

In addition, Dr. Sedacca is on staff at two hospitals. He also sits on a physicians' panel under the Heart and Lung Act, through which he evaluates police officers and firefighters who sustain injuries in the course of their employment. He sees Philadelphia police officers and firefighters on a weekly basis who have muscular types of injuries to different joints. Dr. Sedacca also performs medical evaluations for the Social Security Administration.

Notably, Dr. Sedacca has been qualified as an expert in the field of internal medicine and disability evaluations in various courts. In these cases, he evaluated and discussed orthopedic type injuries.

Based on these credentials, it is evident that Dr. Sedacca had more knowledge than is otherwise within an ordinary layman's range of training,

knowledge, intelligence, or experience. That an orthopedist may have been more qualified does not mean Dr. Sedacca was totally unqualified to serve as an expert on causation and damages in this personal injury case. A witness having "*any* reasonable pretension to specialized knowledge on a given subject should be allowed to testify as [an] expert witness[] even though they are not the 'best possible witnesses' available". ***Chanthavong*** at 387-88 (*quoting **Taylor v. Spencer Hospital***, 292 A.2d 449, 453 n. 2 (Pa. Super. 1972)) (emphasis added). Instead, the strength of Dr. Sedacca's credentials, relevant to the issues in this case, goes to the weight of his testimony, not its admissibility. Consequently, we are constrained to conclude that the trial court abused its discretion in precluding Dr. Sedacca from testifying at trial.

This, however, does not conclude our review. As discussed above, the mere exclusion of evidence does not necessitate a new trial unless the aggrieved party can demonstrate prejudice. "Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment." ***Detterline v. D'Ambrosio's Dodge, Inc.,*** 763 A.2d 935, 938 (Pa. Super. 2000). Thus, notwithstanding our conclusion regarding the trial court's ruling on Dr. Sedacca's testimony, Wright must demonstrate that the ruling prejudiced him to the extent that the verdict would have been different.

Wright claims that the preclusion of his sole medical expert so late in the litigation process prejudiced him, particularly with respect to the amount of damages awarded. The trial court's decision to grant Marriott's motion *in limine* enabled Marriott to emphasize Wright's failure to present any medical

expert at trial to the jury during its closing argument. Wright's Brief at 36-37. Wright further claims that, although he presented some medical records under an exception to the hearsay rule, these records were not an adequate substitute for expert testimony. *Id.* at 42. Despite these arguments, the trial court concluded that Wright did not suffer impermissible prejudice as a result of the preclusion of Dr. Sedacca's testimony. Trial Court Opinion, 4/17/18 at 10-11.

The trial court based its conclusion on the fact that the evidence presented at trial enabled the jury to find causation between the accident and Wright's injuries as well as the extent of the damages he sustained. The trial court observed: Wright "testified at trial about the location and nature of his injuries, his self-diagnosis, the different medical treatments he received and their various successes or failure, and his ongoing pain and lifestyle consequences of the injury. The jury clearly found this sufficiently provided injury, causation, and damages."[4] *Id*. Because the jury found in favor

---

[4] In a personal injury case, when there is no obvious causal relationship between the accident and the injury, medical testimony is necessary to establish the causal connection. *Smith v. German*, 253 A.2d 107, 109 (Pa. 1969). Where, however, the cause of the injury is clear and the subject matter is within the common experience and understanding of lay jurors, expert testimony is not required. *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 752 (Pa. 2002).

The instant case required expert medical causation testimony. The causal connection between Wright's fall and his injuries, especially the shoulder injury that was diagnosed much later and that required surgery, was not obvious. After the trial court erroneously precluded Wright's medical expert

Wright, concluding that Marriott was 100% liable for Wright's accident, and awarded Wright $55,000 in non-economic damages in addition to over $8,000 for his medical expenses without the aid of Dr. Sedacca's testimony or Wright's medical records, the trial court determined that Wright was not prejudiced. *Id.* at 10-11. Here, we find that the trial court abused its discretion.

Although Wright was successful on his claim, Wright did not get a fair trial on damages due to the preclusion of Dr. Sedacca's testimony. Without Dr. Sedacca's testimony, Wright could not offer a credible medical perspective. Wright himself did not have any medical training or knowledge; he could only explain his personal experience—what happened, how he felt, and the treatments he received. However, there was no objective expert medical testimony to corroborate his subjective testimony. Dr. Sedacca's testimony was critical to fully explaining to the jury what happened to Wright physically, how his injuries affected him and the extent to which they affected him. Most significant though is that Wright was not able to present evidence of his prognosis and the impact this injury would have on him into the future.

These errors in Wright's case were further compounded by Marriott's emphasis during closing argument on Wright's failure to produce a medical doctor at trial to tell the jury about Wright's injuries or the effect on Wright. Clearly, these errors could have affected the jury's determination on damages

_____

from testifying regarding causation, it compounded the error by denying Marriott's motion for nonsuit. Wright's testimony about his injuries and treatment was legally insufficient to make out a prima facie case of negligence for the jury.

- 15 -

suffered by Wright. Consequently, we agree with Wright that the admission of Dr. Sedacca's testimony could have an effect on the outcome of this case in a significant way. *Crespo v. Hughes*, 167 A.3d 168, 188-89 (Pa. Super. 2017) (granting appellant a new trial on damages only, where erroneous evidentiary ruling on admission of testimony to show severity of injury and future wage loss directly and adversely affected damages claims but not liability claims), *appeal denied*, 184 A.3d 146 (Pa. 2018).

We therefore conclude that Wright was prejudiced, and the trial court's error is reversible. Wright is entitled to a new trial.

We now must determine the scope of the new trial. Wright argues in his second issue on appeal that a new trial should be limited only to damages. Marriott contends that granting a new trial on damages only would be unfair. Marriott further argues that, since no request for a new trial on both causation and damages was made, this Court cannot grant a new trial on both issues.

Contrary to Marriott's argument, the law governing the scope of a new trial, and not a party's request, controls the issues on whether a new trial shall be awarded. *Catalano v. Bujak*, 642 A.2d 448, 450 (Pa. 1994). Under certain circumstances, the award of a new trial may be limited solely to the issue of damages. *Lambert v. PBI Indus.*, 366 A.2d 944, 955 (Pa. Super. 1976). A new trial solely on damages may be granted where: 1) the question of liability is not intertwined with the question of damages, and 2) the issue of liability has been fairly determined or free from doubt so that no substantial complaint may be made with regarding that. *Id.*

- 16 -

In this case, the parties had a fair opportunity to litigate the issues of negligence and contributory negligence. Both parties were represented by counsel. Wright presented three witnesses: Wright, personally, who testified as to what happened the day of the incident and what he observed about the conditions of the property and the weather; the hotel manager, who testified regarding the layout of the property, management of the premises, the hotel's policies and procedures to handle inclement weather, and the report of Wright's incident; and an expert witness in the area of engineering and human factors who testified regarding Marriott's compliance with industry standards to reduce slip-and-fall hazards and compliance with township code, particularly in snowy and icy conditions. Similarly, Marriott presented an expert witness in the area of engineering who testified regarding compliance with industry standards and the township code, and the presence of evidence to support Wright's theories of the formation of the ice patch. Each side had the opportunity to cross-examine the other's witnesses. Of particular note, Marriott's cross-examination of Wright included questions about how his actions may have contributed to the accident. In short, each side had a full and fair opportunity to present its case on liability.

The jury concluded that Marriott was negligent, *i.e.*, that Marriott had a duty to keep the sidewalk clear of ice, that Marriott failed to do so, and that this failure caused Wright to fall. The jury further found that Wright was not contributorily negligent. Neither party raised an issue regarding liability on appeal.

Further, the issue of damages is easily separable from the issue of liability. The preclusion of the expert medical testimony solely relates to the connection between Wright's fall and the damages resulting from it. This case is factually similar to our decision in *Cooper v. Burns*, 545 A.2d 935 (Pa. Super. 1988), *appeal denied*, 563 A.2d 888 (Pa. 1989). In *Cooper*, the trial court erred by allowing one medical expert witness to corroborate his own expert medical opinion with that of another doctor through improper hearsay. This error directly affected the evidence presented regarding the extent of plaintiff's injuries suffered in the accident. Because of this prejudicial hearsay, we granted the appellant in *Cooper* a new trial. Since the issue of liability was fairly determined, we limited the new trial to the issue of damages only. *Id.* at 288-89; *see also Crespo*, *supra*.

Similarly, here, the trial court's misapplication of the law directly concerned the issues of Wright's injuries and corresponding damages. Wright complains that he was unable to introduce all of his evidence related to his injuries due to Dr. Sedacca's preclusion. But for Dr. Sedacca's preclusion, Marriott was prepared to move forward with its own medical expert testimony disputing the relationship between Wright's fall and his injuries. Because the extent of Wright's injuries resulting from the fall must be proven again, both parties may present evidence of the damages Wright sustained as a result of his fall. In other words, both parties will have the opportunity to present a full and fair case on the question of damages.

As we did in **Cooper** and **Crespo**, we will limit Wright's new trial to damages only. The trier of fact shall rehear and determine Question Six as set forth on the verdict slip:[5]

> State the amount of damages, if any, sustained by the Plaintiff Bryan Wright as a result of the accident.
>
> Economic Damages (medical expenses)      $_____
>
> Non-Economic Damages (pain and suffering, *et cetera*) $_____
>
> **Total**   $_____

R.R. at 178a; N.T. at 104

Judgment in favor of Wright vacated in part as to Wright's award of damages. Order denying grant of new trial reversed in part as to damages only. Case remanded for a new trial on damages consistent with this Opinion. Jurisdiction relinquished.

Judge Bowes joins the Opinion.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/19

---

[5] The new verdict slip can omit reference to the causal negligence of Wright since the jury already determined that Wright was not at fault in this accident.

- 19 -