**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| MOHAMED DIAKITE AND ASSETOU DOUMBIA, H/W | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>: |
| v. | :<br>:<br>: |
| FATINAH MOSES, JOSHUA MOSES, CYD WALKER, CYD CHERESE WALKER | :<br>: No. 3050 EDA 2023<br>:<br>:<br>: |
| APPEAL OF: MOHAMED DIAKITE | : |

Appeal from the Order Entered November 17, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  181203830

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                          **FILED OCTOBER 18, 2024**

Mohamed Diakite ("Diakite") appeals from the order entered by the Philadelphia County Court of Common Pleas ("trial court") granting the post-trial motion filed by Fatinah Moses ("Moses") and awarding a new trial for damages.[1] Diakite argues that the trial court abused its discretion in awarding the new trial as the damages evidence presented at trial supported the verdict. Upon review, we affirm.

The trial court set forth the relevant underlying facts as follows:

> On January 3, 2019, [Diakite] filed a complaint related to the accident that occurred on February 16, 2017, in Philadelphia,

_____

[1] An appeal may be taken as of right from a civil action order awarding a new trial.  **See** Pa.R.A.P. 311(a)(6).

Pennsylvania. The accident occurred at an intersection. [Moses] testified that as she approached the intersection and after stopping at the stop sign, "there was cars on each side... I couldn't see. I had to inch out and try to see." Both [Diakite] and [Moses] testified that they did not see each other's car until after the accident. [Diakite]'s vehicle struck [Moses'] vehicle on the passenger's side while [Diakite]'s vehicle sustained damage to the driver's side and front bumper. [Moses] drove off about a block away from the accident before she stopped her vehicle and exchanged information with [Diakite] who had been chasing after [Moses'] vehicle on foot.

[Moses] testified that she was taken off guard and was scared for her safety after the accident. [Diakite] testified that he hit his head, neck, and back from the collision. [Diakite] called the police after [Moses] stopped her vehicle. When the police did not show up but sent an ambulance instead, [Diakite] went to the police station to make a statement before he then walked to the hospital. At the hospital, [Diakite] complained of neck pain and denied having any back pain. [Diakite]'s neck CT scan and head CAT scan came back normal.

[Diakite] was discharged from the hospital on the same day. [Diakite] testified that he stayed home for two weeks following the accident, then he went back to work. [Diakite] did not seek other formal medical treatment at a medical facility. At the direction of his attorney, [Diakite] started physical therapy because "the pain was still there." [Diakite] went to physical therapy for about three-and-a-half months before he stopped going because he "was feeling a little bit better" and he was busy working two jobs. [Diakite]'s last physical therapy was in June 2017 and since then has received no other treatment.

On February 20, 2020, the parties entered a stipulation to remand to arbitration. The stipulation was approved on February 21, 2020, and the matter was transferred to the Philadelphia Court of Common Pleas, Compulsory Arbitration Program. On January 3, 2023, the Report and Award of Arbitrators was filed stating that Defendants Joshua Moses, Cyd Walker, and Cyd Cherese Walker were stipulated out by agreement. In the January 3, 2023, Report and Award of Arbitrators, the arbitrators found in favor of [Diakite] and against [Moses] in the amount of $4,000.00.

On January 31, 2023, [Diakite] appealed the arbitrators' award. On October 11, 2023, the matter was assigned to th[e trial c]ourt with a jury trial to commence on October 16, 2023.

Trial Court Opinion, 12/28/2023, at 1-3 (citations and footnote omitted).

Prior to trial, Moses filed a motion in limine to preclude Diakite's expert, Dr. Christian Fras, from testifying about Diakite's future medical treatment and costs. Subsequently, the parties conducted Dr. Fras' video deposition on August 7, 2023. During the deposition, Dr. Fras explained that he examined Diakite on two occasions—in 2019 and 2023—and reviewed his medical records. Dr. Fras further stated that Diakite was still suffering from neck and back pain. According to Dr. Fras, Diakite suffered a disc herniation at the C5-6 level. Additionally, Dr. Fras stated that although Diakite had not been treated for several years, Diakite would require future medical treatment, including physical therapy and pain management interventions.

Prior to the jury trial, the trial court heard argument on the motion in limine, after which it denied Moses' motion and allowed the admission of Dr. Fras' deposition at trial. On October 17, 2023, following a two-day trial, the jury found Moses was negligent and awarded Diakite $25,000 in damages. Moses filed a post-trial motion seeking a new trial, arguing that trial court erred in allowing Dr. Fras to speculate regarding the future costs of Diakite's treatment and that the $25,000 verdict was excessive. Moses did not raise any claims related to the jury's finding of negligence. Diakite filed an answer. Diakite also filed a petition for delay damages, seeking to mold the verdict to

include delay damages in the amount of $4,865.24. Moses filed a response to this petition. Ultimately, the trial court granted Moses' post-trial motion, vacated the jury verdict, and granted a new trial.[2] Diakite filed a notice of appeal and complied with Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Diakite raises the following questions for our review: "Whether the [t]rial [c]ourt abused its discretion and misapplied the law when it granted [Moses'] [p]ost[-t]rial [m]otion and ordered a new trial based on [Diakite']s expert's opinions that [Diakite] needed future medical treatment?" Appellant's Brief at 6.

"This Court's standard of review over a trial court's decision to grant or deny a new trial is whether the trial court abused its discretion." *Steltz v. Meyers*, 265 A.3d 335, 344 (Pa. 2021). Additionally, "decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court and we may reverse only if we find an abuse of discretion or error of law." *Wright v. Residence Inn by Marriott, Inc.*,

---

[2] We note that the trial court's order did not limit its grant of a new trial strictly to damages. *See* Trial Court Order, 11/17/2023 (stating, in part, that a new trial "will be set as to all issues."). The issues raised by Moses in the post-trial motion, however, make clear that the request for relief was limited to the damages award, not to the finding of negligence. *See Mader v. Duquesne Light Co.*, 241 A.3d 600, 614 (Pa. 2020) ("A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not 'intertwined' with the issue of liability; and (2) where the issue of liability has been 'fairly determined' or is 'free from doubt.'") (citation omitted). Following our review, "the issue of liability is free from doubt based on the record." *Crespo v. Hughes*, 167 A.3d 168, 189 (Pa. Super. 2017). We therefore treat the trial court's grant of Moses' request for a new trial as to damages only.

- 4 -

207 A.3d 970, 974 (Pa. Super. 2019) (citation, brackets, and quotation marks omitted). "[F]or such evidentiary ruling to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict." *Id.* (citation omitted).

Diakite contends that the trial court abused its discretion in granting a new trial. Appellant's Brief at 15, 21. Diakite argues that the trial court did not make any mistakes at trial and properly allowed Dr. Fras to testify about Diakite's future treatment. *Id.* at 15-16. Diakite highlights that in reaching his conclusion that Diakite will need future medical treatment, Dr. Fras noted that he is an expert in orthopedics and orthopedic surgery; examined Diakite on two occasions; and reviewed the medical records and MRI imagining of Diakite's spine. *Id.* at 17-18. Diakite notes that Dr. Fras provided future medical treatment costs in his first report, but concedes that he did not testify regarding the costs of the future medical care or place it in his second report. *Id.* at 17. Diakite further asserts that Dr. Fras was not required to be Diakite's treating physician to qualify as an expert witness opining about Diakite's need for future treatment. *Id.* at 18-19. Diakite also argues that the $25,000 verdict was not excessive. *Id.* at 21. He seeks a reversal of the trial court's

order, and remand for the trial court to decide his motion for delay damages. *Id.* at 21, 23.[3]

The law is clear that for the question of damages related to future medical expenses to be submitted to a jury, "the movant must prove, by expert testimony, not only that future medical expenses will be incurred, but also the reasonable cost of such services… . ***Chavers v. 1605 Valley Ctr. Pky, LP***, 294 A.3d 487, 498 (Pa. Super. 2023) (emphasis and citation omitted); ***see also Helpin v. Trustees of Univ. of Pennsylvania***, 10 A.3d 267, 270 (Pa. 2010) ("The law does not permit a damages award to be based on mere guesswork or speculation, but rather requires a reasonable basis to support such an award.") (citation omitted). Further, "the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto." Pa.R.Civ.P. 4003.5(c).

Dr. Fras, an orthopedic surgeon with a subspecialty interest in surgical treatment of spinal disorders, was offered as Diakite's expert. N.T., 8/7/2023, at 9. In 2023, he authored a report on Diakite's injuries sustained in the accident, stating that he reviewed Diakite's medical records and MRIs, and he

---

[3] Diakite also makes arguments in support of the jury's finding of negligence, arguing that a new trial is not warranted on that basis. ***See*** Diakite's Brief at 19-23. Because we conclude the trial court only granted a new trial as to damages, ***see supra,*** note 2, we need not address these claims.

had conducted two physical examinations. Report, 3/23/2023, at 1-3. Dr. Fras concluded that as a result of the accident, Diakite sustained "injuries of cervical and lumbar sprain and strain, cervical disc herniation at C5-6 and aggravation of cervical spondylosis[,]" and that "Diakite has not fully recovered from all his injuries." *Id.* at 3. Noting Diakite suffered permanent injuries, Dr. Fras stated that he will need future treatment, including "physical therapy for both the cervical and lumbar spine regions, pain management interventions, including cervical and lumbar epidural steroid injections, cervical and lumbar facet injections, and cervical and lumbar radiofrequency ablation as well as anterior cervical decompression and fusion at C5-6." *Id.*

Dr. Fras provided deposition testimony in accord with his report regarding Diakite's injuries, which was introduced at the jury trial. *See* N.T., 10/16/2023, at 101-02. He testified that he physically examined Diakite on two occasions and reviewed his medical records, including imaging studies. N.T., 8/7/2023, at 9, 11-16. According to Dr. Fras, at his March 2023 examination, Diakite was still experiencing neck and back pain. *Id.* at 15; *see also id.* at 31 (noting that "a person can have a degenerative condition of the spine and have no symptoms whatsoever, but then they can have an injury, some kind of an insult, some kind of a trauma that can render those changes symptomatic"). He stated that because of the accident, Diakite was suffering from a disc herniation between C5 and C6 vertebrae on the spine, cervical and lumbar sprain, and strain and aggravation of cervical spondylosis.

*Id.* at 18-21, 33-34. According to Dr. Fras, treatment for disc herniations includes physical therapy, medication, and injections, and that Diakite would need future treatment for his injuries, which would include therapy, medications, and injections, surgery, pain management interventions, epidural steroid injections, and facet injections, but acknowledged that Diakite had not sought treatment since 2017. *Id.* at 25-26, 28-29, 43-45; *see also* N.T., 10/16/2023, at 88-89 (wherein Diakite admitted that he has not received treatment for his injuries since 2017).

Although Dr. Fras testified that Diakite will require future treatment for his injuries from the accident, he did not present any evidence as to the cost of such treatment in either his 2023 report or testimony.[4] *See Chavers*, 294

_____

[4] In his 2019 report, Dr. Fras indicated Diakite would need future treatment and assigned the cost of such services:

> Further treatment is indicated for [] Diakite's injuries to include formal pain management with injections, including cervical epidural steroid injections, cervical facet injections, radiofrequency ablation, and pharmacologic management of his condition as well as updated imaging studies of the cervical and lumbar spine, including MRI of the cervical and lumbar spine and, ultimately, pursuit of surgery, including C5-6 anterior cervical decompression and fusion. Fees for the above-noted further treatment will exceed $100,000.

Report, 11/22/2019, at 4. However, as noted above, Dr. Fras did not state any such costs in his 2023 report or testify to these costs in his deposition. *See Gregury v. Greguras*, 196 A.3d 619, 630 (Pa. Super. 2018) (noting that an expert's testimony must be confined to the scope of his/her report). More importantly, in both his 2023 report and testimony, Dr. Fras recommends different treatment than he did in 2019, including physical therapy, lumbar
*(Footnote Continued Next Page)*

A.3d at 498. Therefore, the trial court should have precluded Dr. Fras from testifying to any potential future treatment. *See id.* (concluding that the trial court properly limited expert testimony regarding future treatment where the expert never indicated the amount future treatment would cost). Apart from Diakite's testimony generally describing his injuries and prior treatment, Dr. Fras' testimony is the only evidence provided in the certified record before us that would arguably support an award of damages.[5] Dr. Fras gave detailed testimony regarding Diakite's medical history—including past and present symptoms, injuries sustained, and pain suffered by Diakite as a result of the collusion with Moses—and specifically explained the potential future treatment Diakite may require. Thus, because Dr. Fras' testimony was instrumental in establishing Diakite's injuries and potential need for additional treatment, the trial court properly granted a new trial limited to damages. *See Crespo*, 167 A.3d at 188-89 (granting a new trial on damages only where the erroneous

_____

epidural steroid, and lumbar facet injections. As Dr. Fras has not established a reasonable cost for the treatment he now recommends, the costs stated in the 2019 report could not be utilized to support a damages award for Diakite's future treatment.

[5] We note that various exhibits were presented at trial by both parties, including Diakite's intake forms and emergency room records; however, these exhibits have not been included in the certified record. As such, we cannot determine whether the exhibits detailed Diakite's injuries or established costs of prior treatment. It is well established that "the burden to produce a complete record for appellate review rests solely with the appellant." *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 644 n.2 (Pa. Super. 2013) (citation omitted).

admission of testimony establishing future wage losses directly and adversely affected the damages claims). The damages-only trial includes all potential damages, excluding damages for future treatment, and "both parties will have the opportunity to present a full and fair case on the question of damages." **Wright**, 207 A.3d at 981; **see also Hyang v. Lynde**, 820 A.2d 753, 756 (Pa. Super. 2003) (limiting new trial to only a certain type of damages, and did not allow the plaintiff to get a "second bite at the apple" to prove other damages). Based upon the foregoing, we affirm the trial court's order granting a new trial limited to damages.[6]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/18/2024

_____

[6] In its Rule 1925(a) opinion, the trial court requests a remand for further proceedings on the post-trial motion and the petition for delay damages. Trial Court Opinion, 12/28/2023, at 4 (unnumbered). The trial court noted that it should have asked the parties for memoranda in support of their argument and held a hearing. **Id.** (unnumbered). Although the trial court seeks a remand for further proceedings, the record clearly supports the trial court's initial conclusion granting a new trial. Moreover, because there will be a new trial on damages, the petition for delay damages is now moot.