581 A.2d 649

**Debbie L. DIEROLF, Appellant,**

v.

**Edwin W. SLADE, Jr., D.M.D., James L. Tamaroff, D.D.S., Ann M. Showan, M.D., Doylestown Hospital, and John or Jane Doe R.N., L.P.N., Anesthetist or Technician.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1990.

Filed Oct. 22, 1990.

Yale F. Edeiken, Allentown, for appellant.

John J. Hart, Doylestown, for appellee Slade.

David C. Federman, Philadelphia, for appellee Showan.

Before ROWLEY, McEWEN and CERCONE, JJ.

ROWLEY, Judge:

This is an appeal by Debbie L. Dierolf from a judgment entered against her and in favor of appellees, Edwin W. Slade, Jr., D.M.D., Ann M. Showan, M.D., and Doylestown Hospital, defendants in a medical malpractice action.

Appellant underwent oral surgery to correct a congenital deformity of her jaw. The day after the surgery, appellant discovered she had a dropped foot due to a compression of the peroneal nerve in her leg. Appellant brought an action against Edwin W. Slade, Jr., D.M.D., James L. Tamaroff, D.D.S., Ann M. Showan, M.D., Doylestown Hospital, and John or Jane Doe R.N., L.P.N., Anesthetist or Technician, alleging medical malpractice.[1] Specifically, appellant alleged that appellees failed to properly pad, position, restrain, or monitor her body during surgery. The jury returned a verdict in favor of appellees, judgment was entered in favor of the appellees, and appellant filed the instant appeal from that judgment.

On appeal, appellant argues that the trial court erred in: excluding the testimony of Dr. Cook; limiting the testimony of Dr. Shane; and refusing to grant a new trial because the

1. James L. Tamaroff, D.D.S., and John or Jane Doe R.N., L.P.N., Anesthetist or Technician were dismissed at the close of plaintiff's case, and their dismissal has not been raised on appeal.

verdict was against the weight of the evidence.[2] Based upon our thorough review of the record and consideration of the arguments presented, we affirm the judgment.

Appellant first argues that the trial court erred by excluding the testimony of Dr. Cook. In his expert report, Dr. Cook wrote:

I spoke with a colleague who practices podiatry about this injury. I was surprised to learn it is a very common problem and it can be avoided with care. It has also been reported that when early signs of perineal [sic] nerve injury occur, permanency of sequellae can be avoided with a quick response, by repositioning and removing the pressure on the nerve.

(TT I-47). Appellant asserts that, as an expert medical witness, Dr. Cook was entitled to base his opinion on information he received from colleagues or from medical literature. The trial court has adequately discussed and correctly decided this issue:

Dr. Cook's testimony represented not his own opinion but rather that of a colleague and as such, was inadmissible opinion hearsay. The general rule is that medical witnesses are permitted to express opinions on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession. *Commonwealth v. Daniels*, 480 Pa. 340, 347-8, 390 A.2d 172, 176 (1978) and cases cited.

Here, however, the doctor was expressing his personal reactions to a report of an unnamed podiatrist rather than his own opinion. We believe such testimony was properly excluded. Accord: *Cooper v. Burns*, 376 Pa.Super. 276, 288, 545 A.2d 935, 940-1 (1988) [*alloc. denied*, 522 Pa. 619, 563 A.2d 888 (1989) ] (testifying expert not permitted

2. In her statement of the questions involved, appellant also asserts that the trial court erred by not granting a judgment n.o.v.. However, in the argument section of her brief, appellant does not mention why she thinks she is entitled to a judgment n.o.v.. Her argument is limited to a request for a new trial, therefore a request for judgment n.o.v. has been waived.

to read herniated disc diagnosis made by an out of court doctor).

(TC Op. 2/1/1990 at 4–5).

The trial court had an additional ground for excluding Dr. Cook's testimony: he was not qualified as an expert.[3] Dr. Cook is an orthodontist who does not perform oral surgery. Appellant points out that Dr. Cook discusses surgery with the oral surgeons, has observed oral surgeries in the past, and has testified as an expert for the defense in several medical malpractice cases, (TT I–54–56). However, Dr. Cook never performed surgery, never observed a peroneal nerve injury, is not a neurologist, is not board certified, and is rarely present in the operating room. As the trial court noted, Dr. Cook

> had not demonstrated sufficient expertise in nerve injuries to the leg or surgical procedures to be able to express an opinion about body positioning and padding during surgery.... Dr. Cook had neither recent clinical experience in operating room procedures nor training in an area of medicine that would satisfy the requirements for qualification.
>
> As stated in *Dambacher v. Mallis*, 336 Pa.Super. 22, 42–3, 485 A.2d 408, 418–9 (1984) [*appeal dismissed*, 508 Pa. 643, 500 A.2d 428 (1985)] if a witness possess neither experience nor education in the subject matter under investigation, he should be found not qualified.

(TC Op. 2/1/1990 at 3–4). We agree with the trial court's discussion and disposition of this issue and find no merit to appellant's argument.

■ Appellant next argues that the trial court improperly limited the testimony of Dr. Shane by precluding Dr. Shane from answering the following question:

**3.** According to appellant, the record indicates that hearsay, and not lack of qualification, is the sole basis for excluding Dr. Cook's testimony. This is factually incorrect. Appellees objected: "I'm objecting, Your Honor. [Dr. Cook's] not qualified in oral surgery, neurology, or orthopedics...." The Court responded: "I'm going to sustain the objection of all three counsel for the reasons stated...." (TT I–65).

Doctor, do you have an opinion to a reasonable degree of medical certainty as to who's responsible for the plaintiff's safety in an operating room?

(TT IV–31, 32). Appellant argues that, by sustaining the objections to this question, the trial court prevented Dr. Shane "from amplifying or explaining his opinion by pinpointing the responsibility of individual personnel in the operating room for the safety and care of the patient." (Appellant's Brief p. 20). Appellant asserts that the trial court sustained the objection based on a factual misapprehension that the testimony would be beyond the scope of Dr. Shane's expert's report, when, in actuality, the testimony was within the scope of the expert's report. However, the trial court sustained the objection because the question called for "non-scientific, non-medical testimony...." (TT IV–32).

Appellant also asserts that the trial court sustained the objection based on a legal misapprehension, because Pennsylvania law does not require an expert to be familiar with a particular hospital's practices in order to testify as to standards of care in routine matters. The trial court has adequately discussed and correctly decided this issue. The trial court sustained the objection because the question called for "non-scientific, non-medical testimony ... and this doctor *hasn't testified* he knows anything about the evidence as to the procedures in this hospital." (TT IV–32) (emphasis added). Although Appellant argues that the trial court should have permitted Dr. Shane to testify as to general standards of care, appellant never laid a foundation for this testimony nor pursued this line of inquiry after the initial objection was sustained. The trial court noted:

When the objections were sustained, plaintiff's counsel did not thereafter pursue his course from another avenue. Counsel was free to ask Dr. Shane if he was familiar with the procedures at Doylestown Hospital, or if he was familiar with the generally accepted standards of care of hospitals in operating room procedures and how, if at all, they differed from the practice at Doylestown Hospital.

We believe that plaintiff has waived her objection to the court's ruling.

(TC Op. 2/1/1990 at 6). Since appellant laid no foundation for this testimony, we find no error by the trial court.

Lastly, appellant argues that the trial court erred in refusing to grant a new trial because the verdict was against the weight of the evidence. Granting a new trial on the ground that the verdict is against the weight of the evidence is generally committed to the sound discretion of the trial court. *Commonwealth v. Sullivan*, 372 Pa.Super. 88, 90, 538 A.2d 1363, 1365 (1988), *alloc. denied*, 521 Pa. 612, 557 A.2d 343 (1989) (citations omitted). Upon review, the test is not whether the appellate court would have decided the case in the same way but, rather, whether the jury's verdict was so contrary to the evidence as to shock one's sense of justice and "to make the award of a new trial imperative, so that right may be given another opportunity to prevail." *Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984) (citations omitted).

Appellant argues that, in light of *Jones v. Harrisburg Polyclinic Hospital*, 496 Pa. 465, 437 A.2d 1134 (1981), an inference of negligence arose once appellant's testimony was concluded. However neither *Jones* nor Restatement (Second) of Torts § 328(D)(2) requires that an inference must be drawn. In fact, Restatement (Second) of Torts § 328(D)(2), which discusses *res ipsa loquitor*, states: "It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn." [4] Citing *Gallegor by Gallegor v. Felder*, 329 Pa.Super. 204, 478 A.2d 34 (1984) (*res ipsa loquitor* applied to medical malpractice cases), the trial court correctly concluded:

We found that the jury might reasonably draw an inference either way on this issue and instructed them at

---

**4.** We further note that appellant made no objection at trial to the trial court's jury instructions on *res ipsa loquitor*, which stated, in part: "You may infer, although you're not required to do so, that the harm suffered by Miss Dierolf was caused by negligence of a particular defendant...." (TT V–29).

16

length to consider this question on the conflicting evidence of the different witnesses.

(TC Op. 2/1/1990 at 8). In the instant case, appellant presented evidence that her injury was caused by negligence. Appellees presented evidence that they were not negligent. It was the function of the jury to determine the weight to be given to the evidence. The jury's verdict was not contrary to the evidence it received. Nor did the trial court abuse its discretion in failing to grant a new trial.

Judgment affirmed.