# Hackett v. Mac and Sam Inc.

C.P. of Delaware County, no. 97-21021.

*John L. Aris,* for plaintiff.
*Robert D. Billet,* for defendant.

BRADLEY, *J.,* June 15, 2001—Defendant Mac and Sam Inc. appeals from the entry of judgment in favor of plaintiffs after a jury trial.

On December 28, 1995, plaintiff, Arthur Hackett, went to Mac and Sam Inc. a car dealership in Clifton Heights, Delaware County. He stopped there because his car developed engine problems while he was between sales calls. Mr. Hackett was a salesperson for an automotive parts company. Mac and Sam was a customer of his. Mr. Hackett also bought cars from Mac and Sam and took his cars there for service and repairs. That afternoon, Mr. Hackett pulled his car into the dealership lot, got out and went into Mac and Sam's where he handed his keys to the service manager and told him about the car problem he was experiencing. Mr. Hackett testified there was no ice in the area where he originally parked his car although he did notice ice in another area of the lot. (N.T. 10/23/2000 pp. 59, 60, 79.) He decided to wait in the parts department while his car was being repaired. When he was informed the car was ready, he went outside and found that his car was no longer where he originally parked it. (N.T. 10/23/2000 p. 61.) To get to his car, Mr. Hackett had to walk across jagged ice. (N.T. 10/23/2000

p. 61.) He slipped and fell on the ice located near his car injuring his head, neck and back. (N.T. 10/23/2000 p. 63.) There were no witnesses to his fall. After he fell, employees of Mac and Sam convinced him to go to Delaware County Memorial Hospital for treatment and drove him there. (N.T. 10/23/2000 p. 65.) A CAT scan and x-rays were taken and he was treated and released. (N.T. 10/23/2000 p. 65.)

At trial, Mr. Hackett testified that he developed physical problems stemming from the fall. His wife; a co-worker, Mr. Gedraitis; his daughter, Margaret Murphy; his daughter-in-law, Stacey Hackett; and his son-in-law, George Spaeder; all testified that Mr. Hackett's mental and physical condition noticeably worsened after the fall. All these witnesses, except Mr. Gedraitis, testified on cross-examination that they were aware plaintiff had two car accidents, one in June 1995, preceding the fall and one in September 1997, after the fall. All these witnesses also testified on cross-examination that they were aware of Mr. Hackett's numerous surgeries for subsequent ailments unrelated to the fall.

Plaintiffs' and defendant's medical experts disagreed on whether and to what extent plaintiff suffered injuries as a result of the fall on December 28, 1995. A neurologist, Dr. Christopher J. Reed, testified on videotape for the plaintiff. He opined, to within a reasonable degree of medical certainty, that as a result of the fall, Mr. Hackett suffered cervical myelopathy, cervical radiculopathy, cervical strain and spasm, lumbar radiculopathy, lumbar

sprain and spasm and may have suffered a peroneal neuropathy and injury to his nerve in his leg. (N.T. 10/23/2000 pp. 131-32.) The jury was made aware that aside from the emergency room visit to Delaware County Memorial Hospital at the time of the accident, plaintiff did not see another doctor until 10 months after the accident. An orthopedic surgeon, Dr. Joseph Shutouey and a neurologist, Dr. Steven Gullen testified for the defense. Dr. Shutouey testified that Mr. Hackett suffered aggravation to his arthritic condition as a result of the fall. (N.T. 10/23/2000 p. 204.) He stated further that this was a temporary injury which would resolve in three weeks to three months. (N.T. 10/23/2000 p. 204.) Dr. Gullen testified that Mr. Hackett suffered from a myelopathic disorder or dysfunction of the spinal cord but that malady was unrelated to his fall at Mac and Sam's. (N.T. 10/23/2000 p. 227.)

The jury rendered a verdict in favor of plaintiffs. They awarded $200,000 in damages to Mr. Hackett and $25,000 in damages for loss of consortium to Mrs. Hackett. Post-trial motions were filed and denied. Judgment was entered in favor of plaintiffs. This appeal followed.

Defendant asserts that the trial court erred in failing to instruct the jury on the doctrine of "hills and ridges." That doctrine provides:

"There is no liability created by a general slippery condition on sidewalks. It must appear that there were dangerous conditions due to ridges or elevations which

were allowed to remain for an unreasonable length of time, or were created by defendant's antecedent negligence." *Rinaldi v. Levine,* 406 Pa. 74, 78, 176 A.2d 623, 625 (1962).

In the instant case, the "hills and ridges" doctrine is not applicable. There was no testimony that general slippery conditions prevailed at the time of plaintiff's fall. Indeed, Mr. Hackett parked his car and walked into the dealership without encountering any ice. It was only when he went to retrieve his car from where defendants service personnel had parked it that he encountered a patch of jagged ice. This case involves a specific, localized patch of ice. "[W]here a specific, localized patch of ice exists, it is comparatively easy for a property owner to take the necessary steps to alleviate the condition, while at the same time considerably more difficult for the pedestrian to avoid it even exercising the utmost care." *Williams v. Shultz,* 429 Pa. 429, 433, 240 A.2d 812, 814 (1966). Proof of hills and ridges is not required when the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice. *Tonik v. Apex Garages Inc.* 442 Pa. 373, 275 A.2d 296 (1971). Plaintiff was not required to prove the existence of "hills and ridges," a fortiori, so it was appropriate not to charge the jury on this doctrine.

Defendant also asserts that it was erroneous not to instruct the jury with regard to slipping and falling on ice when there are not generally slippery conditions present in the community. The court explained at side-bar after jury

instructions that the instructions on general negligence principles and the accompanying duties of landowners with respect to business invitees, were sufficient to instruct the jury on the law regarding an isolated patch of ice and the landowner's responsibility to a business invitee for that condition. "A trial [court] has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Wilson v. Anderson,* 420 Pa. Super. 169, 173, 616 A.2d 34, 36 (1992). Defendant does not suggest that any part of the charge was erroneous, just that the court refused to charge "hills and ridges" and refused to use defendant's exact wording on liability for a specific, localized patch of ice. Looked at in its entirety, we believe the charge fairly and accurately instructed the jury on the law.

Finally, defendant claims that the two verdicts, one for personal injuries and one for consortium were against the weight of the evidence. The decision whether to grant a new trial based upon an assertion that the verdict is against the weight of the evidence lies with the trial court. *Dierolf v. Slade,* 399 Pa. Super. 9, 15, 581 A.2d 649, 652 (1990).

"A new trial will not be granted on the basis of a weight of the evidence claim unless evidence supporting the verdict is so inherently improbable or at a variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice." *Brindley v. Woodland Village Restaurant,* 438 Pa. Super. 385, 399, 652 A.2d 865, 872 (1995).

The verdict in favor of plaintiffs does not shock the court's sense of justice. The jury heard testimony from plaintiffs and their immediate family that Mr. Hackett's physical condition began to deteriorate from the date of the fall. Dr. Reed testified that Mr. Hackett's injuries were caused by the fall. Mr. Hackett testified that he was reluctant to bring this action against Mac and Sam, his former customer, whose employees were his long-standing acquaintances. The jury heard the cross-examination of plaintiffs' witnesses who were asked if they were aware of two car accidents in which Mr. Hackett was injured and subsequent surgeries he underwent for a variety of illnesses. Merely because Mr. Hackett had only $7,500 in medical expenses yet received a $200,000 verdict does not indicate the verdict is against the weight of the evidence. The duty of assessing damages is within the province of the jury and should not be disturbed absent a clear finding that the amount resulted from partiality, caprice, prejudice, corruption or some other improper influence. *Sehl v. Vista Linen Rental Serv. Inc.* 763 A.2d 858, 864 (Pa. Super. 2001). There is no indication that the verdict resulted from any of the above. Obviously, the jury found plaintiff and his evidence credible. He and his witnesses testified that he endured chronic pain and suffering from his injuries. His once active lifestyle was drastically altered. Although the medical expenses of $7,500 were low in proportion to the $200,000 total verdict, the jury was free to conclude that the value of the pain and suffering and loss of life's pleasures was worth substantially more than the medical expenses incurred.

Defendant also argued that the jury award to Margaret Hackett in the amount of $25,000 for loss of consortium was against the weight of the evidence. On direct examination, Mrs. Hackett replied "No" to the question, "Were there any ways that the injuries affected your relationship with your husband?" (N.T. 10/23/2000 p. 94.) If that negative answer was the sum total of Mrs. Hackett's testimony, the court would agree that no award should be given for loss of consortium. However, in response to the follow-up question, "Were there any activities that were affects [sic] at all," Mrs. Hackett replied:

"Well we used to like to go down to the shore with the kids and he could walk the boardwalk, take the kids on rides and everything. A couple times I would go down, he just about gets on the boardwalk, he can't do anymore walking. We used to like to go out and dance, which he loved to dance and I do, but we can't do that anymore. He can't mow the lawn anymore. He can't do anything hardly around the house. I have my son and my son-in-law that help us out." (N.T. 10/23/2000 p. 94.)

Clearly, the above testimony supports the jury award for loss of consortium. It has been the experience of this court that spouses typically testify that their feelings for their injured spouse have not changed but when questioned about the specifics of their life together they testify candidly to the many changes occasioned by the injury. Mrs. Hackett's testimony confirms this.

It is for all the above reasons that defendant's motion for post-trial relief was denied and judgment was entered in favor of plaintiffs.