J-A06026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STACY PHILLIPS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BENJAMIN GILBERT AND GILBERT | : | |
| DENTAL CENTER | : | |
| | : | |
| Appellees | : | No. 39 EDA 2019 |

Appeal from the Judgment Entered December 10, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  July Term, 2016  02819

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED APRIL 14, 2020**

Appellant, Stacy Phillips, appeals from the judgment entered in the Philadelphia County Court of Common Pleas, following the denial of her post-trial motions to remove a compulsory nonsuit in favor of Appellees, Benjamin Gilbert and Gilbert Dental Center.  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant now raises three issues for our review:

> WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN DENYING [APPELLANT'S] POST-TRIAL MOTION TO REMOVE THE NONSUIT WHERE [APPELLANT] PRESENTED TWO EXPERTS,

_____

[*] Former Justice specially assigned to the Superior Court.

BOTH OF WHOM OFFERED OPINIONS WITHIN A REASONABLE DEGREE OF PROFESSIONAL CERTAINTY REGARDING THE STANDARD OF CARE FOR THE PROPER PLACEMENT OF A RESTORATIVE IMPLANT AND A PATIENT'S CANDIDACY FOR THE PLACEMENT OF RESTORATIVE IMPLANT.

WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN DENYING [APPELLANT'S] POST-TRIAL MOTION RELATIVE TO [APPELLEE'S] MOTION TO QUASH [APPELLANT'S] EXPERT'S, DR. PLISKIN'S, TESTIMONY WHERE DR. PLISKIN HAS 48 YEARS OF EXPERIENCE AS A LICENSED GENERAL AND RESTORATIVE DENTIST IN THIS COMMONWEALTH AND WHERE HIS EXPERIENCE, SKILL, AND KNOWLEDGE INCLUDE ASSESSING AND EVALUATING RESTORATIVE IMPLANTS FOR PROPER POSITIONING AND WHERE THE ISSUE IN THIS CASE IS WHETHER [APPELLEE] VIOLATED THE STANDARD OF CARE BY PLACING THE RESTORATIVE IMPLANT IN [APPELLANT'S] MOUTH IN THE POSITION HE DID.

WHETHER THE [TRIAL] COURT ABSUED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN DENYING [APPELLANT'S] POST-TRIAL MOTION TO OVERRULE [APPELLEE'S] OBJECTION TO [APPELLANT'S] EXPERT'S, DR. PLISKIN'S, TESTIMONY REGARDING [APPELLANT'S] CANDIDACY FOR THE PROCEDURE WHERE DR. PLISKIN'S OPINION THAT [APPELLANT] HAD BONE LOSS THAT REQUIRED GRAFTING PRIOR TO THE PLACEMENT OF A PROPER IMPLANT IS WELL WITHIN THE FAIR SCOPE OF THE FOUR CORNERS OF HIS REPORTS, AND WHERE [APPELLEE] WAS NOT MISLEAD OR PREVENTED FROM PROVIDING A RESPONSE TO THIS OPINION AND, IN FACT, DID PROVIDE A RESPONSE TO THIS OPINION THROUGH A DEFENSE EXPERT, DR. RAYMOND J. FONSECA.

(Appellant's Brief at 10-11).

After a thorough review of the record, Appellant's brief, the applicable law, and the well-reasoned opinion of the Honorable Marlene Lachman, we conclude Appellant's issues merit no relief. The trial court opinion

- 2 -

comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed June 19, 2019, at 5-19) (finding: **(1)** Dr. Pliskin did not offer opinion as to standard of care for implant placement, or that Dr. Gilbert had breached standard of care; Dr. Pliskin did testify that Appellant's implant was not in restorable position, but such testimony did not constitute expert opinion as to standard of care for implant placement; during his deposition, which was entered into evidence, Dr. Rothman explained he was not offering any expert opinion as to standard of care for implant placement; **(2)** Dr. Pliskin testified he is oral and maxillofacial pathologist, and not oral and maxillofacial surgeon; Dr. Pliskin agreed that instant case does not involve oral pathology; Dr. Pliskin never placed implant during his entire career in dentistry; although Dr. Pliskin evaluated patients for implant-related issues, he lacked training, experience, and knowledge necessary to opine on standard of care for implantation procedure at issue; and **(3)** Dr. Pliskin's reports did not opine that Appellant was bad candidate for implantation; reports opined that placement of implant was negligent, but they did not state that procedure should not have been done due to insufficient amount of bone; reports mention bone deficit only in conjunction with post-implant-removal restoration surgery, and not in conjunction with Appellant's pre-implantation condition). The record supports the trial court's decision. Accordingly, we affirm based on the trial court opinion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/20

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| **STACY PHILLIPS** | : | **JULY TERM, 2016** |
| | : | |
| **vs** | : | **No. 02819** |
| | : | |
| **BENJAMIN GILBERT, and** | : | **Superior Court Docket** |
| **GILBERT DENTAL CENTER** | : | **No. 39 EDA 2019** |

**OPINION**

Lachman, J.                                                          June /7, 2019

## I. Factual and Procedural Background

This dental malpractice case involves a failed dental implant. A compulsory nonsuit was entered because the Plaintiff was able to prove only that a bad result occurred, and was unable to prove negligence.

Plaintiff Stacy Phillips was 49 years old when she decided to replace her "flipper" with a dental implant in the front of her upper jaw. A flipper is a lightweight removable partial denture. She lost the original tooth approximately 30 years earlier in a childhood accident.

On November 2, 2015, Defendant Dr. Benjamin Gilbert, D.D.S., placed a dental implant in the area of tooth number 8 (the upper right central incisor) in the front of the Plaintiff's mouth. He also prepared teeth in the upper right and lower left back of Plaintiffs mouth for crowns. Two days later Plaintiff went to another dentist, Dr. Marc Rothman, D.M.D., primarily complaining about pain in the teeth in the back of her mouth which had been prepared for crowns. His examination revealed a serious problem involving tooth number 2. He recommended that she see an endodontist to save the tooth, which she

16070281900130

did. Dr. Rothman also recommended that she have the implant removed because it was not placed properly.

Plaintiff returned to Defendant Gilbert on November 9, 2015. Dr. Gilbert offered to remove the implant, but Plaintiff declined. Instead, Plaintiff on December 2nd, returned to Dr. Rothman and he removed the implant. There was a resultant bony defect or hole in her jaw which Dr. Rothman treated with a bone graft to reconstruct the defect.

Plaintiff filed this action in 2016, alleging that Defendants Gilbert and Gilbert Dental Center, negligently placed the dental implant in the area of tooth number 8 and perforated the labial plate. The trial of this case began with jury selection on August 17, 2018, and ended with the entry of a compulsory nonsuit on August 21st.

At trial, Plaintiff presented the testimony of her treating dentist, Dr. Rothman, and the expert testimony of Dr. Michael Pliskin, DDS, Ph.D. Neither witness testified to the standard of care for dental implantation and its breach. In his September 29, 2016 expert report, Dr. Pliskin stated "[i]n my opinion to a reasonable degree of dental certainty, Dr. Ben Gilbert negligently placed the implant into the number 8 area on November 2, 2015." "As a result of the negligent placement of the implant into the number 8 area by Dr. Gilbert ... " Plaintiff suffered damages.[1]

After voir dire, the Court barred Dr. Pliskin from testifying as to the standard of care. He is an oral and maxiliofacial *pathologist* and not an oral and maxiliofacial *surgeon*, and has no training, experience, or knowledge of how to correctly place an implant. Later, the Court sustained a defense objection and barred Dr. Pliskin from testifying as to whether Plaintiff was a proper candidate for the implant, because that issue was outside

---

[1] Dr. Pliskin, produced four reports, dated 9/29/16, 2/28/17, 5/9/17 and 8/27/17.

the fair scope of Dr. Pliskin's expert reports. Those rulings resulted in the Plaintiff failing to establish a prima facie case and the entry of the nonsuit under appeal.

Defendants moved for a compulsory nonsuit as the close of the Plaintiff's case-in-chief. The argument on the motion is at NT 8/22/18 (PM) pp. 43-75. The Plaintiff's evidence merely proved a bad result from the implant procedure and not negligence.

> THE COURT: Granted that Dr. Pliskin and Dr. Rothman both were able to testify that in their opinion this outcome would not sustain a cap or tooth or prosthetic being added to the abutment, that's a bad result, clearly a bad result. ... But the bottom line is, even if it is a bad result, that does not establish negligence.

Id. p. 61.

At the conclusion of the arguments, the Court granted Defendants' nonsuit motion because the Plaintiff failed to present expert testimony on the standard of care.

> THE COURT: You may be seated.
>
> There is no doubt in the Court's mind that in this case we are talking about issues that are beyond the ken of the average layperson and that expert testimony as to the appropriate way of performing the procedure was necessary.
>
> Standard of care for an operative procedure, whether it be a medical operation or a dental operation, cannot be inferred. Neither Dr. Pliskin or -- let me restate that.
>
> Dr. Pliskin was barred from testifying as to standard of care for the procedure because he had no experience with the procedure, having never been trained in it and having never performed it, and I don't believe he ever witnessed it either.
>
> A bad result -- and there's no doubt that the testimony of Dr. Pliskin and Dr. Rothman is that there was a bad result -- but a bad result alone does not establish negligence.
>
> There was no evidence as to the standard of care or how it was breached. And although Dr. Rothman indicated that he would not -- he could not do an implant without doing a graft, having already

3

filled in the hole from the mini implant that was removed by him, that's one person's opinion and it doesn't rise to the standard of care.

Under the circumstances in this case, absent the appropriate testimony on standard of care and breach thereof, the plaintiff has failed to establish negligence which is a necessary prong -- or breach of the standard of care which is a necessary prong in order to prevail in front of the jury. And accordingly, the Court grants the motion for nonsuit.

NT 8/22/18 (PM) pp. 73-75.

## II. Post-Trial and Appeal

Plaintiff timely filed three separate post-trial motions instead of including all of her issues in one motion:

- Plaintiff's Post-Trial Motion for Reconsideration of Defendant's Motion to Quash/Objection to Plaintiff's Expert, Dr. Michael Pliskin, Relative to the Standard of Care Regarding the Placement of Restorative Implants.  Control No. 18083081.

- Plaintiff's Post-Trial Motion for Reconsideration of Defendant's Objection to Testimony by Plaintiff's Expert, Dr. Michael Pliskin, Relative to Plaintiff's Candidacy for the Restorative Implant Procedure by Defendant Gilbert.  Control No. 18083083.

- Plaintiff's Post-Trial Motion for Reconsideration of the Entry of Nonsuit.  Control No. 18083505.

The Defendants filed one response discussing all three motions.

The Court denied all three motions and Plaintiff filed a timely appeal.  Plaintiff raised the following issues in her timely-filed Pa.R.A.P. 1925(b) statement:

1. Whether the Trial Court abused its discretion in denying Appellant's Post-Trial Motion for Reconsideration of its Order precluding Appellant's Expert, Dr. Michael Pliskin, from testifying relative to Appellant's candidacy for restorative implant procedure given her pre-existing bone loss in the area of tooth no. 8.

4

2. Whether the Trial Court abused its discretion in denying Appellant's Post-Trial Motion for Reconsideration of its Order precluding Appellant's Expert, Dr. Michael Pliskin, from testifying relative to the standard of care for the proper placement of restorative implants.

3. Whether the Trial Court abused its discretion in denying Appellant's Post-Trial Motion for Reconsideration of its Order entering Non-Suit where Appellant presented two experts who offered opinions within a reasonable degree of certainty regarding the standard of care for the proper placement of a restorative implant, and Appellee's breach of same.

4. Whether the Trial Court abused its discretion in denying Appellant's Post-Trial Motion for Reconsideration of the Entry of Nonsuit given that Appellant presented two experts at Trial who offered opinions within a reasonable degree of certainty regarding Appellant's candidacy, or lack thereof, for the proper placement of a restorative implant by Appellee Gilbert.

None of these issues has merit. The second issue will be discussed first because the first issue grows out of it.

### III. Discussion

### A. Legal Principles Governing This Case

The purpose of a motion for compulsory nonsuit is to allow the defendant to test the sufficiency of the plaintiff's evidence. An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury.

> In the context of actions for medical malpractice, the plaintiff must establish that (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of the duty was the proximate cause of, or a substantial factor in bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm.

5

In determining whether to grant a compulsory nonsuit, the trial court must give the plaintiff the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor.

*Dietzel v. Gurman,* 806 A.2d 1264, 1268 (Pa. Super. 2002) (quotes and citations omitted). *Accord,* *Keffer v. Bob Nolan's Auto Serv., Inc.,* 59 A.3d 621, 631 (Pa. Super. 2012) ("a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action").

"Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Grossman v. Barke,* 868 A.2d 561, 566 (Pa. Super. 2005) (citation omitted). Expert testimony is required because a jury usually lacks the knowledge required to determine factual issues of medical causation, the degree of skill, knowledge and experience required of a physician, and a breach of a standard of care. *Grossman*, 868 A.2d at 566-567. Without expert testimony, "the jury could have no basis other than conjecture, surmise or speculation upon which to" decide the case. Id. at 567.[2]

---

[2] *See also,* *Lambert v. Soltis,* 221 A.2d 173 (1966) (nonsuit affirmed because patient failed to present expert testimony to establish dentist's alleged negligence in injecting an anesthetic into the patient's gum with a needle); *Bierstein v. Whitman,* 62 A.2d 843 (1949) (nonsuit affirmed because patient failed to offer an expert witness to establish the measure of professional skill required of a dentist who, in extracting a tooth, fractured the patient's jaw).

Dentists are not included in the provisions of the MCARE Act. The requirements for dental and medical malpractice cases are otherwise identical. *See e.g., Dieroff v. Slade,* 581 649 (Pa. Super. 1990).

When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman.

If the subject is of this sort, the next question the court should ask is whether the witness has sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. [*See*,] *Erschen v. Pennsylvania Independent Oil Co.*, 259 Pa.Super. 474, 393 A.2d 924 (1978) (witness who had no formal instruction or on-the-job-training in origin of gas explosions not qualified as expert, notwithstanding qualification as fire marshal).

*Dambacher by Dambacher v. Mallis*, 485 A.2d 408, 415 (Pa. Super. 1984) (break added, quotes and some citations omitted). An "expert witness must show special knowledge of [the] very question upon which he promises to express [an] opinion." Id., citing *In Re Involuntary Termination of Parental Rights*, 449 Pa. 543, 297 A.2d 117 (1973).[3]

A "physician is not expected to guarantee a good result from the course of treatment he recommends or administers. ... A course of treatment which culminates in a bad result is not evidence of negligence in a malpractice case." *Ragan v. Steen*, 331 A.2d 724, 727 & 728 (Pa. Super, 1974).

As a matter of proof in malpractice cases, there is no presumption or inference of negligence merely because a medical procedure terminated in an unfortunate result which might have occurred despite the exercise of reasonable care. This is especially so where the treatment and injury involved are such that common knowledge or experience of laymen is not sufficient to form the basis for passing an intelligent judgment. In such

---

[3] *Dambacher* was abrogated in part on other grounds in *Moroney v. General Motors Corp.*, 850 A.2d 629, 634-635 (Pa. Super. 2004) (in products liability actions, proof of negligence may be possible without a finding of strict liability).

7

cases, expert testimony in support of the plaintiff's claim is an indispensable requirement to establish a right of action.

***Collins v. Hand***, 246 Pa. 398, 401 (1968).

> ### B. The Court correctly held that Dr. Pliskin lacked the training, experience, and knowledge necessary to testify concerning the standard of care for the procedure at issue.

Plaintiff first tendered Dr. Pliskin as "an expert in the field of dentistry," and later as an expert in "general restorative dentistry, not oral maxillofacial surgery." NT 8/21/19 (AM) pp. 29, 51.[4]

On voir dire, Dr. Pliskin testified that he is an oral and maxillofacial *pathologist*, and not an oral and maxillofacial *surgeon.* NT 8/21/18 (AM) pp. 25, 48. He is not board certified in oral and maxillofacial pathology or in any other specialty. Id. p. 40.

Oral and maxillofacial surgeons and pathologists undergo completely different training and the procedures performed by the surgeons are entirely different from the procedures performed by oral and maxillofacial pathologists. NT 8/21/18 (AM) pp. 31-32. Oral and maxillofacial pathologists identify and manage diseases affecting the oral and maxillofacial regions and investigate the causes, processes, and effects of those diseases, like herpes and oral cancer, to name a few. Id. p. 32. Dr. Pliskin agreed that this case is not about any disease process in Plaintiff's oral cavity and does not involve oral pathology. Id.

---

[4] "Maxillofacial" means relating to, treating, or affecting the upper jaw and the face. **Merriam-Webster's Medical Dictionary** p. 433 (2006).

8

Dr. Pliskin has never placed an implant in his entire 48-year career as a dentist. That includes both standard and the mini implant involved in this case. When he was in private practice, he did very few crowns and bridges. NT 8/21/18 (AM) p. 34.

He is on the faculty of the Temple University School of Dentistry and evaluates potential patients in its Clinic. His primary duties are to teach students general medicine, emergency dentistry, radiology, and the diagnostic evaluation of patients with oral disease such as herpes, ulcers, and cancer. NT 8/21/18 (AM) p. 37.

- Dr. Pliskin does not teach, and has never taught, students how to place or restore implants. Id. pp. 38, 39.

- Dr. Pliskin has never restored an implant. Id. p. 39.

- Dr. Pliskin does not lecture in the area of implant placement. Id. 38.

- Dr. Pliskin does not teach students how to do crown and bridge work. Id. p. 38.

- Dr. Pliskin does not teach, and has never taught, students how to do bone grafting or reconstruction. Id. p. 39.

- Dr. Pliskin does not teach, and has never taught, students how to make, remove, or insert removable prosthetics. Id. p. 39.

- Dr. Pliskin has done no research related to implants, bone grafting, or restoration of implants. Id. pp. 45-46.

- Dr. Pliskin has not made any presentations related to implants, bone grafting, or restoration of implants. Id. p. 46.

- Dr. Pliskin has no publications related to implants, bone grafting, or restoration of implants. Id. p. 46.

Although Dr. Pliskin evaluates patients at Temple's dental clinic for implant-related issues, he does not perform any work on patients or implants himself; he merely refers

9

patients to the appropriate specialist within the dental school. The actual decision as to the appropriate treatment is left to those specialists, not to Dr. Pliskin. He has no oversight of any of those specialists. NT 8/21/18 (AM) pp. 39-40, 53. He described his work at Temple's dental clinic as follows:

> At Temple, I examine every person that walks in that dental school Monday through Friday for elective admissions. Many of those patients are coming to us with implants that were placed at other dentists, and because we're cheaper, we do the restoration. And I was involved – I am involved with assessing the implant quality and determining whether or not that's a successful implant or not a successful implant and whether it can be restored and then referring it out to the appropriate specialty based on what I see as an evaluation.

> So if the implant was failing, I would send, most likely, to our school to periodontics which would manage the implant failure. If the implant was succeeding, I would refer the patient to prosthodontics or restorative dentistry where they would do the crowns. *So I'm kind of like a traffic cop.*

> But my experience with implants, yes, I've not placed them; yes, I have not restored them; but I have a lot of experience and – up to this day with evaluating patients who were coming in either needing implants, [or] looking at bone levels.

NT 8/21/18 (AM) p. 50 (emphasis added).

The Court asked Plaintiff's counsel for a proffer as to what Dr. Pliskin would testify to if he were able to testify.

> MS. AYRES: Your Honor, Dr. Pliskin will testify that the purpose of -- that the implant placed by Dr. Gilbert was placed in such a manner that when it perforated the labial plate and extended to the area of Tooth No. 7, it was in a non-restorable position and a breach of the standard of care.

> The implant -- the purpose of the implant is restorability. The purpose of the implant is to be placed into -- within the content of the bone and not perforating it as it did and that because of the placement of it -- that he would go on to say that because of that placement and that breach which made it non-restorable, it needed to be removed. And Dr. Rothman did in fact remove it.

10

NT 8/21/18 (PM) p. 5.  The Court then precluded Dr. Pliskin from testifying as to the

standard of care for performing dental implant procedures.

> THE COURT: All right. Given the proffer, given the evidence elicited on voir dire that Dr. Pliskin has neither been trained in nor had experience performing implant procedures, he will not be permitted to testify as to the standard of care.
>
> Given his experience evaluating patients for their -- for referrals to other specialists, he can testify within that realm as to the appropriateness of a candidate for the procedure. And he can testify as to -- based on his testimony that he has treated patients post-implant, he can testify as to post-implant treatment. But there's nothing in his resume or testimony to indicate that he has any basis for opining as to the standard of care for a dental implant.

NT 8/21/18 (PM) pp. 6-7.

Although Dr. Pliskin could look into a patient's mouth and determine whether an

implant was successful or unsuccessful, he lacked the training, experience, and

knowledge necessary to opine as to the standard of care for the implantation procedure

at issue in the present case.  An expert witness is not qualified to testify if he does not

possess either experience or education in the subject matter under investigation.

**Dambacher by Dambacher v. Mallis,** 485 A.2d at 415 & 418.

> Generally, "[i]n the area of medicine, specialties sometimes overlap and a practitioner may be knowledgeable in more than one field. Different doctors will have different qualifications, some doctors being more qualified than others to testify about certain medical practices." Where the expert is qualified to testify, the weight of that testimony is for the jury to determine.
>
> On the other hand, medical experts may be unqualified to testify about the standards of care applicable in certain other medical fields. In other words, **"it may appear that the scope of the witness's experience and education may embrace the subject in question in a general way, but the subject may be so specialized that even so, the witness will not be qualified to testify."** Dambacher v. Mallis, 336 Pa.Super. 22, 485 A.2d 408, 419 (1984), appeal dismissed, 508 Pa. 643, 500 A.2d 428 (1985);

11

*see also, Kovalev,* 2003 PA Super 432, ¶ 10, 839 A.2d 359 (doctor with general medical training was unqualified to testify about his orthopedic injuries); *Yacoub,* 805 A.2d at 592 (plaintiff failed to demonstrate that neurosurgeon was qualified to render expert opinion about standard of care appropriate to internal medicine or special unit care nursing); *Dierolf v. Slade,* 399 Pa.Super. 9, 581 A.2d 649, 651 (1990) (orthodontist lacked training and experience necessary to present expert testimony regarding oral surgery); *McDaniel v. Merck, Sharp, & Dohme,* 367 Pa.Super. 600, 533 A.2d 436, 441-442 (1987) (expert in anesthetic drugs lacked training and experience to testify about whether continued use of an antibiotic drug caused death).

**Wexler v. Hecht,** 847 A.2d 95, 99–100 (2004) (emphasis added, some citations omitted; podiatrist who was expert in general field of foot surgery lacked the training and experience necessary to opine about standard of care relevant to orthopedic surgeon who performed bunion-removal surgery), affirmed, 593 Pa. 118, 928 A.2d 973 (2007).

**Dierolf v. Slade,** 581 A.2d 649 (Pa. Super. 1990), was a medical malpractice action against an oral surgeon for failing to properly identify and treat compression of the patient's peroneal nerve in her leg during oral surgery. An orthodontist was not qualified to give expert testimony regarding the patient's dropped foot condition because the orthodontist did not perform oral surgery, and had not demonstrated expertise in nerve injuries to the leg or surgical procedures that was necessary to express an opinion about body positioning and padding during surgery. The facts as to what the orthodontist's job entailed mirror those of what Dr. Pliskin does.

> The trial court had an additional ground for excluding Dr. Cook's testimony: he was not qualified as an expert. Dr. Cook is an orthodontist who **does not perform oral surgery**. Appellant points out that Dr. Cook **discusses surgery with the oral surgeons**, has observed oral surgeries in the past, and has testified as an expert for the defense in several medical malpractice cases. However, Dr. Cook **never performed surgery, never observed a peroneal nerve injury, is not a neurologist, is not board**

12

**certified, and is rarely present in the operating room.** As the trial court noted, Dr. Cook

> had not demonstrated sufficient expertise in nerve injuries to the leg or surgical procedures to be able to express an opinion about body positioning and padding during surgery.... **Dr. Cook had neither recent clinical experience in operating room procedures nor training in an area of medicine that would satisfy the requirements for qualification.**
>
> As stated in *Dambacher v. Mallis,* 336 Pa.Super. 22, 42–3, 485 A.2d 408, 418–9 (1984), if a witness possess [*sic*] neither experience nor education in the subject matter under investigation, he should be found not qualified.

We agree with the trial court's discussion and disposition of this issue and find no merit to appellant's argument.

***Dierolf v. Slade,*** 581 A.2d at 651 (some citations omitted, emphasis added).

Dr. Pliskin merely evaluates patients seeking dental implants and then refers them to specialists who do the actual implantation, although he may see some of them after the surgery. Dr. Pliskin had no education or training on the type of implant at issue. While the scope of his experience embraced the general subject of assessing patients as candidates for implants, it did not embrace the specialized subject of the correct placement of implants. Nothing in his experience, training, or education qualified him to opine on the correct procedure for placing the Plaintiff's implant or the need to add bone material before her implant. *Compare,* ***Dambacher v. Mallis***, 485 A.2d at 420.

The Court correctly barred Dr. Pliskin from testifying as to the standard of care.

13

## C. The Court correctly ruled that whether the Plaintiff was a proper candidate for implants was not within the fair scope of Dr. Pliskin's reports.

At the conclusion of the voir dire on Dr. Pliskin's qualifications, the Court barred Dr. Pliskin from testifying concerning the standard of care. The Court also ruled that his experience made him qualified to testify concerning whether Plaintiff was a proper candidate for implants:

> Given his experience evaluating patients for their -- for referrals to other specialists, he can testify within that realm as to the appropriateness of a candidate for the procedure. And he can testify as to -- based on his testimony that he has treated patients post-implant, he can testify as to post-implant treatment. But there's nothing in his resume or testimony to indicate that he has any basis for opining as to the standard of care for a dental implant.

NT 8/21/18 (PM) p. 7.

During Plaintiff's direct examination of Dr. Pliskin, the defense objected to Dr. Pliskin discussing the Plaintiff's candidacy for dental implants because Dr. Pliskin's expert reports never mentioned that issue.

> Q. Okay. So, Dr. Pliskin, let's talk a little bit about your review of the records. And before we do that in particular, I want to ask you some questions generally about dental patients who are missing teeth, have had tooth removal, have a flipper, and they decide to pursue an implant procedure.
>
> When a dental patient is being considered for an implant procedure, what considerations does a general dentist take into account in deciding whether that person is a candidate for that procedure?
>
> MR. BATES: Objection, Your Honor; beyond the fair scope.
>
> THE COURT: Ms. Ayres, can you direct me?
>
> MS. AYRES: Your Honor, may we request a sidebar?

14

THE COURT: Quickly.

NT 8/21/18 (PM) pp. 12-13. At the conclusion of the sidebar, the Court sustained the objection. Id. p. 23.

The crux of the issue was whether Dr. Pliskin's various reports opined that Plaintiff was a bad candidate for implantation. They did not; that subject is never mentioned in the reports. Dr. Pliskin's reports are collected in Defendants' Post-Trial Exhibit C.

The court asked Plaintiff's counsel, "Is there anything in his report that deals with the fact that she was not a candidate for the procedure?" NT 8/21/18 (PM) p. 16. After searching the report, Plaintiff's counsel stated:

> MR. HILL. In this he talk about the fact that the implant must be placed so that it is confined to the bone. And I think that gives us the corner wherein he --
>
> THE COURT: That's standard of care, Counselor. And I said that he is not to testify on standard of care for the procedure.
>
> MS. AYRES: Your Honor, I honestly believe that if he is saying that the implant must be confined to the bone, and I know that this is now excluded, but within the content of his report, and he says it was negligently placed because it perforated the bone. And Your Honor's limiting him to talking about the candidacy of her. His opinion in that regard --
>
> THE COURT: His testimony was that he evaluates people and refers then to the appropriate specialist if he thinks they're a candidate for the implant or whatever the procedure is. So I said that he could testify in that area.
>
> MS. AYRES: And that's what I'm asking.
>
> THE COURT: Based on his expertise, not based on the report.
>
> MS. AYRES: But I'm asking him his expertise when counsel objected. That's why we're here.
>
> MR. BATES [defense counsel]: Because --
>
> MS. AYRES: I limited my question.

15

MR. BATES: Because there's nothing in his report about that. I mean, *he can testify to that based on his expertise, but it still has to be in his report.*

THE COURT: *Exactly.*

MR. BATES: *And it's not.*

NT 8/21/18 (PM) pp. 17-18 (emphasis added).

Plaintiff also argued that Dr. Pliskin impliedly said Plaintiff was a bad candidate because he said she had the same hard and soft tissue defect before the implantation, as she had after the failed implantation was removed by Dr. Rothman. NT 8/21/18 (PM) pp. 18-22. *See* Sept. 29, 2016 report p. 1. His report mentions the bone deficit only in conjunction with post-implant-removal restoration surgery, and not in conjunction with her pre-implantation condition.

Dr. Pliskin's reports consistently opine that the placement of the implant was negligent, but never state that the procedure should not have been done because there was insufficient bone to support an implant. The May 17, 2017 report is based on 40 digital x-ray images from Dr. Gilbert. Dr. Pliskin says some of them show that the implant was incorrectly placed too close to the root of an adjacent tooth. Presumably, the same x-rays should have shown the insufficient bone mass, and been commented upon in Dr. Pliskin's reports if he were of the opinion that the lack of bone mass made her a bad candidate for implantation. His reports are silent on the candidacy issue and the Court properly prevented him from testifying beyond the fair scope of his reports.

## D. Plaintiff did not present any witness who testified regarding the standard of care for the proper placement of an implant.

Dr. Pliskin testified regarding the evaluation and referral of patients. He did not offer any opinion as to the standard of care for implant placement, or that Defendant Gilbert had breached that standard of care. Dr. Pliskin did testify that the implant placed by Dr. Gilbert was not in a restorable position, meaning that it was not positioned so that the restorative dentist could place a cap or denture on it. NT 8/21/18 (PM) pp. 26-27, 55. That testimony did not constitute expert opinion as to the standard of care for implant placement, or that Defendant Gilbert had breached that standard of care. It merely opined that a bad result had occurred and was silent about it being the result of negligence.

Plaintiff incorrectly asserts that Plaintiff's *treating dentist* – Mark G. Rothman, D.M.D. – gave expert testimony on the standard of care.[5] Dr. Rothman testified as Plaintiff's treating dentist and not as an expert. In his trial deposition, he testified that, as a treating dentist, the ethical rules of the American Association of Oral and Maxiliofacial Surgeons barred him from giving expert testimony. Dep. p. 65 (Defendants' Ex F). He stated that his opinions "pertaining to *my* treatment and why *I* chose to treat the way *I* did," was not affected by the ethics code. Id. p. 66 (emphasis added). However, his treatment is his personal opinion and not the standard of care for dental implants generally. Dr. Rothman testified that he was not offering any expert opinions with regard to the standard of care for the placement of implants, and that he was not offering any

---

[5] Dr. Rothman appeared at trial and testified live. NT 8/21/18 (PM) pp. 65-89. His testimony was curtailed in the midst of the Plaintiff's direct examination by the lateness of the hour. He could not return the next morning, so the parties took his trial deposition instead and played it to the jury the next afternoon. NT 8/22/18 (PM) p. 20. The deposition is Defendants' Exhibit F.

17

opinions, expert or otherwise, regarding whether Dr. Gilbert breached the standard of care. Id. pp. 68-69.

Plaintiffs incorrectly assert that Dr. Rothman in fact, offered an opinion on the standard of care relative to the location of restorative implants. He testified that Plaintiff's implant was not in a restorable position and had to be removed. Rothman Dep. pp. 12, 27-29. However, Dr. Rothman did not testify that an implant which is in a non-restorable position is a breach of the standard of care. Like Dr. Pliskin's similar testimony, this was only evidence of a bad result, not negligence.

### E. Plaintiff did not present any witness who testified regarding plaintiff's candidacy, or lack thereof, for an implant.

The discussion above in part III B demonstrates that Dr. Pliskin did not testify that Plaintiff was not a good candidate for the placement of an implant.

Plaintiff incorrectly asserts that Dr. Rothman testified that Plaintiff was a bad candidate for implantation because she had insufficient bone material. That assertion is based on a misreading of his testimony. Dr. Rothman testified that he believed the implant as placed was non-restorable and that Plaintiff had bone loss *after* the implant was removed that would need to be repaired via bone graft before another implant was placed. See, e.g., NT 8/21/18 (PM) pp. 88-89.

Dr. Rothman consistently testified that as a result of the removal of the failed implant, there was insufficient bone to support a *new* implant. Plaintiff twists that testimony and says Dr. Rothman said the lack of bone made her a bad candidate for the *original* implant. Rothman Dep. pp. 12, 18-20, 23-25, 34-40.

There was no evidence that Plaintiff was a bad candidate for a dental implant.

18

## IV. Conclusion

The Superior Court should affirm the entry of the judgment of nonsuit in favor of the Defendants Benjamin Gilbert and Gilbert Dental Center, and against the Plaintiff Stacy Phillips.

BY THE COURT:

LACHMAN, J.

19